### Scott's Administrators, et al. v. City of Mayfield.

(Decided April 18, 1913.)

### Appeal from Graves Circuit Court.

1. Bonds— Franchises— Action—Pleading— Demurrer.— Where a street railway franchise ordinance provides that the railway shall, within five years, be finished only on such streets as are necessary properly to serve the public and make a reasonable profit, it is necessary, in an action on a bond conditioned for the faithful performance of that section of the ordinance, to allege and prove that the street railway could have been constructed on one or more of the streets of the city and conducted at a reasonable profit.

2. Bonds—Franchises—Extension of Time to Commence Work—Release of Obligors.—Where a street railway franchise is sold to a partnership, and a bond is executed by the partnership and its individual members, conditioned that the purchasers will comply with the provisions of the franchise ordinance with reference to commencing and finishing the construction of the railway, one of the partners who signed the bond is not released from liability by an extension of time within which to commence the work of construction, even though he be insane when the extension was granted.

3. Bonds—Franchise—Street Railway—Liquidated Damages.—Where a street railway franchise requires the railway to be commenced and constructed within a given period of time, and the purchasers execute to the municipality a bond conditioned that the purchasers will comply with the provisions of the franchise ordinance in that respect, the sum fixed in the bond will be regarded as liquidated damages, and may, on a breach of the bond, be recovered without proof of actual damage, unless the sum so named is unreasonable or oppressive.

4. Franchises—Valueless—Recovery of Purchase Price.—The pur-
chasers of a franchise cannot recover of a municipality the pur-
chase price where the franchise turns out to be of no value.

JOHNSTON & WYMAN and D. G. PARK for appellants.

A. L. GILBERT, M. B. MOLIFIELD and B. GARDNER for appel-
lee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

Mayfield, Kentucky, is a city of the fourth class. On
July 1, 1907, its board of council adopted an ordinance
creating and establishing a franchise or privilege to con-
struct, maintain and operate a street railway in that city,
and providing for the sale of the franchise or privilege.
The ordinance was approved by the mayor, and published
as required by law. On July 12, 1907, the sale having
been duly advertised as required by the ordinance, the
franchise was sold at public auction to the highest and
best bidder. J. W. Williams & Company, a partnership,
composed of J. W. Williams, George Rush, H. H. Loving,
B. H. Scott and John F. Horth, were the highest bidders,
and became the purchasers of the franchise at the price
of $200.

Section 14 of the ordinance is as follows:

"That the construction of said street railway shall
commence within twelve months after sale of this fran-
chise and shall be fully completed and equipped and in
good running order within five years from said sale, so as
to accommodate the traveling public. The intention of
this section being that said railway shall be completed
within said time on such streets as are herein mentioned,
as is necessary to properly serve the public and make
reasonable profit, and does not mean that the same is to
be finished completely or constructed on all of said
streets other than is necessary to accommodate the pub-
lic, and do a profitable business. For the strict and
faithful compliance with this section the owners of this
franchise shall tender with their bid a covenant with
good and solvent security to the City of Mayfield, in the
sum of $1,000.00, to be paid to the City of Mayfield, if the
provision of this section for the commencing and com-
pletion of said work is not carried out and upon the com-
pliance with the terms of this section said bond shall be-
come null and void."

Immediately after their purchase, J. W. Williams and Company, and the individual members of the partnership, to-wit: J. W. Williams, H. H. Loving, B. H. Scott, George Rush and John F. Horth, executed to the City of Mayfield the following bond:

"We bind ourselves to the City of Mayfield,Ky., in the sum of one thousand dollars ($1,000.00) that J. W. Williams & Co., their assignee or transferee, will within twelve months from July 12, 1907, commence the construction of a street railway and complete the same within five years as provided for by the ordinance adopted by the Board of Council of the City of Mayfield, Ky., on July 1, 1907, and upon its compliance of section 14 of said ordinance in this particular, then this bond to be null and void, otherwise to be and remain in full force and effect. This July 6, 190—."

The bid of the purchasers and the bond executed by them were accepted and approved by the city, through its board of council.

On April 29, 1910, the City of Mayfield instituted this action against J. W. Williams, George Rush, H. H. Loving, B. H. Scott and John F. Horth, as partners composing the firm of J. W. Williams and Company, and as individuals, to recover damages on the bond in the sum of $1,000.00.

During the progress of the action B. H. Scott became insane and a committee was appointed for him. An amended petition was filed, making him and his committee parties defendant. Thereafter B. H. Scott died, and the action was revived against his administrator.

The demurrer of the defendants to the petition having been overruled, they filed an answer and an amended answer in several paragraphs, to each of which a demurrer was sustained. The defendants then moved the court, in the absence of proof, to fix the amount of recovery by plaintiff at nominal damages. This motion was overruled. The defendants having declined to plead further, the court entered judgment in favor of the plaintiff against the defendants in the sum of $1,000, with six per cent interest from June 27, 1912, and costs. From that judgment this appeal is prosecuted.

We deem it unnecessary to set out at length the petition. It sufficiently pleads the passage, approval and publication of the ordinance, also the sale of the franchise, the purchase by the defendants and the acceptance

of their bid by the board of council. It also properly pleads the execution, delivery and acceptance of the bond sued on. In pleading the breach of the bond by J. W. Williams and Company, it simply alleges that the partnership had failed and refused in good faith to commence building the street railway in question within twelve months from July 12, 1907, the date of the purchase of the franchise, and that it still failed and refused to commence the building of said railway, and that no assignee or transferee of the partnership had commenced its construction. The petition further alleges that the partnership had failed to pay to the city the sum of $1,000, or any part thereof. In our opinion, these allegations of the breach of the bond are not sufficient to state a cause of action. The bond was executed to secure a faithful compliance with section 14 of the ordinance. Therefore, the question whether or not there was a breach of the bond depends on whether or not there was a failure on the part of defendants to comply with the provisions of that section. To show what that section means, the following language is employed:

"The intention of this section being that said railway shall be completed within said time on such streets as are herein mentioned, as is necessary to properly serve the public and make reasonable profit, and does not mean that the same is to be finished completely or constructed on all of said streets other than is necessary to accommodate the public, and do a profitable business."

It is evident from the foregoing language that the defendants did not bind themselves to construct the railway at all events, but only to construct it on such streets as would enable it properly to serve the public and make a reasonable profit. Therefore, if, as a matter of fact, the railway could not be constructed on any street that would enable the company to make a reasonable profit, the defendants were under no obligations at all to construct and complete the railway on any street; and not being required to construct and complete the railway on any street, they were not under any obligation to begin its construction. That being true, it was necessary for plaintiff, in order to recover on the bond, to allege and prove, if denied, that the street railway in question could have been constructed on one or more streets of the City of Mayfield and conducted at a reasonable profit. It follows that defendants' demurrer to the petition should have been sustained.

There are a few other questions which we deem it necessary to pass on. It is alleged in the answer that the time for beginning the work of construction was extended by the city without the knowledge and consent of B. H. Scott, who was insane at the time, and that because of this fact he was released from liability on the bond. In answer to this contention, it is sufficient to say that the bond was executed by the partnership and by the individual members of the partnership. Hence, each of the obligors, including Scott, was a principal and not a surety. His liability, therefore, was in no way increased or affected by the extension. On the contrary, the extension was for his benefit, because it gave to him and his co-obligors a longer time in which to comply with their obligation. The extension, therefore, did not relieve him from liability.

The next question is: Should the amount stipulated in the bond be regarded as a penalty or liquidated damages. In determining whether or not liquidated damages are intended it is proper not only to look to the language of the bond but to consider also the subject matter and difficulty of measuring the actual loss which a breach of the bond would entail. Hence the rule is that where the damages resulting from a breach of the bond are necessarily very uncertain and difficult of ascertainment and the parties have provided a sum certain to be paid in the event of a breach and the sum so named is not unjust or oppressive or out of all proportion to the damages which would actually result from the breach the sum so fixed is construed as liquidated damages rather than a penalty. For this reason it is common for municipal corporations in making contracts for sale of franchises to stipulate for the payment of a fixed sum in liquidated damages in case a public utility is not constructed and put into operation within the time limited in the contract. Nilson v. Town of Jonesboro, 57 Ark., 168, 20 S. W. 1093; Brooks v. City of Wichita, et al., 114 Fed., 297; Gropp v. Perkins, &c., 148 Ky., 183. As said by Dillon, in discussing the question of municipal consent to the construction of a railroad or other public utility in the city streets:

"It has also been generally held that the municipality in giving its consent, may exact from the company the deposit of a sum of money to be forfeited to the municipality, or bond conditioned for the payment to the municipality of a sum of money, in the event of a breach by failure to construct within the prescribed period. Al-

though the courts have recognized the fact that the damage suffered by a total failure to construct results to the public, and not to the municipality in its corporate character, yet they have uniformly regarded the deposit or the penalty of the bond as in the nature of liquidated damages agreed upon in advance by the parties and recoverable by the municipality as such without evidence of any actual loss." Dillon's Municipal Corporations (1911 Edition) Section 1231.

In view of the foregoing authorities, we conclude, as it would be practically impossible to estimate the damage which would accrue from a breach of the bond, that the sum fixed in the bond, which is not unreasonable or oppressive, may be recovered as liquidated damages, upon proper allegations and proof of the breach of the bond, without proof of actual damage.

Of course, there is no merit in the contention of the defendants that the franchise having proved valueless, they are entitled to recover the amount of the purchase price by way of counterclaim. Where a franchise is sold at public auction, the purchasers know what they are buying, and buy with their eyes open. The speculative risk attending its prospective value is one which they necessarily take. If it turns out to be more profitable than is anticipated, the city cannot recover of them a sum in excess of the purchase price on the ground that the franchise proved more valuable than was anticipated; nor can the purchasers recover of the city the purchase price because the franchise proved less valuable than was anticipated, or of no value at all.

Judgment reversed and cause remanded with directions to sustain the demurrer to the petition.