# Indiana-Kentucky Natural Gas Corporation et al. v. City of Springfield et al.

(Decided March 23, 1934.)

616

CARY, MILLER & KIRK for appellants.
JOHN A. POLIN, JOSEPH POLIN, W. F. GRIGSBY and H. M. GRIGSBY for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

On January 2, 1931, the city council of Springfield regularly passed an ordinance creating a franchise to supply gas to the city and the inhabitant thereof for light, heat, power, and other purposes; by section 1 the franchise should continue for a period of twenty-one years from and after the passage of the ordinance; by

section 2 the purchaser should be at all times subject to all laws and ordinances of the city relative to the use of public ways by gas and power companies; by section 3 the laying of all mains, pipes, and other necessary appliances were regulated; by section 4 the purchaser was required to bind himself to hold the city free and harmless from liability on account of injury or damage to persons or property growing out of the construction of the gas mains, etc.; by section 5 the amount the purchaser should receive for gas was regulated; by section 6 the purchaser was authorized to make and enforce reasonable rules and regulations; by section 7 the quality of the gas was regulated. Sections 8, 11, and 12 are in these words:

Section 8: "The purchaser agrees, within a period of twelve [12] months from the date this franchise shall take effect, to have installed in the City of Springfield, ready for business, a gas system, as provided herein, connected by pipe line with a supply of natural gas, capable of giving good and adequate service to the residents of said city and all persons, firms or corporations desiring gas within said city for domestic and industrial purposes, without discrimination according to the terms hereof. Provided, however, that a connection by the purchaser of his system or pipe lines in the City of Springfield with a pipe line of some third party presently capable of furnishing sufficient gas to adequately supply Springfield shall be a full compliance with the purchaser's obligation to furnish gas hereunder."

Section 11: "The franchise created by this ordinance shall become null and void thirty days from the date on which this ordinance takes effect, unless the purchaser within the said thirty days period make bonds in the sum of $2,500.00 to the City of Springfield, guaranteeing his performance under Sec. 8 hereof."

Section 12: "Within ten days after the passage of this ordinance the city clerk, T. Wathen Simms, shall cause this ordinance to be published in two consecutive weekly issues of the Springfield Sun, a weekly newspaper published in Washington County, Kentucky, together with notice that this franchise will be sold at public outcry to the highest and best bidder at the city attorney's office in

said city at the hour of eight o'clock P. M. on the 16th day of January 1931, at which time the city council of the City of Springfield will meet in regular session for acceptance or rejection of bids, reserving the right to reject any and all bids.

"The sale shall be made by J. C. McElroy, Mayor of the City of Springfield, or in case of the absence of this officer, by anyone designated by the city council at the time, and the sale shall be made in the presence and under the supervision of the said council.

"The payment of the purchase price by the purchaser to whom this franchise shall be awarded and the execution and delivery of the bond set out in Sec. XI, and the acceptance thereof by the city council, shall vest the purchaser with all rights and powers herein granted."

By sections 9 and 10 provision was made for a cash deposit by the bidder, and by section 13 the ordinance took effect "from and after its final passage and publication, as herein required." On January 16 the city council accepted the bid of the Indiana-Kentucky Natural Gas Corporation, and it paid to the city $300, the amount of its bid for the franchise; on February 13, 1931, it executed a bond with the Fidelity & Casualty Company of New York and its surety in the sum of $2,500, which, after setting out the above proceedings, concludes with these words:

"Now therefore, the condition of the foregoing is such that if the principal shall faithfully and fully comply with, do and perform all the terms and conditions of the said franchise and shall restore said streets, alleys, pavements and sidewalks to substantially the same condition as formerly and shall pay any and all damages that may be awarded against the obligee on account of any negligence of the said principal by reason of its failure to comply with the terms of the franchise, then the obligation shall be void, otherwise to be and remain in full force and effect."

On January 29, 1932, the city filed this suit against the purchaser of the franchise and its surety in the bond alleging that the purchaser of the franchise had failed to take any steps under the franchise and praying judgment against it and its surety for the $2,500, the amount

of the bond. The defendants demurred to the petition. The demurrer was overruled. They filed answer; the plaintiff demurred to the answer. The court sustained the plaintiff's demurrer to the answer, and the defendants failing to plead further, entered a judgment against them for $2,500 and costs. The defendants appeal.

1. At the conclusion of section 8 of the ordinance, there is a proviso that a connection by the purchaser of his system of pipe lines in the city of Springfield with the pipe line of some third person personally capable of furnishing sufficient gas to adequately supply the gas shall be a full compliance with the purchaser's obligation to furnish gas hereunder. It is insisted that the petition was insufficient in failing to allege that no connection had been made by the purchaser of his system with some third party. But in the statement of what the purchaser had failed to do are these words:

"And has failed to have installed in the City of Springfield, ready for business, a gas system as provided in the franchise, connected by pipe lines with a supply of natural gas, adequate for good service to the persons and residents of the said city."

In addition to this the proviso simply gave the purchaser another means of complying with its contract, and if he connected with another person, the supply by this person would be simply the purchaser's compliance with his contract to install a gas system connected by pipe lines with a supply of natural gas, and the allegation that he had not done this in fact covered the whole case. The answer also expressly alleged facts attempting to excuse the defendant from the obligation to furnish the pipe lines. There was therefore no substantial error in overruling the demurrer to the petition on this ground.

2. By section 8 of the ordinance the purchaser agreed to install the gas system under the ordinance "according to the terms hereof." The condition of the bond that "if the principal shall faithfully and fully comply with, do and perform all the terms and conditions of said franchise" therefore was as broad as the ordinance required, and covered all things required by the ordinance of the purchaser. The objection that the bond was not as provided for by section 8 of the ordinance was therefore properly overruled.

3.  It is urged that the petition does not show that the bond was accepted by the city. The allegation of the petition is that the defendants "executed and delivered to the city of Springfield its bond and obligation * * * in words and figures as follows." Then follows a copy of the bond. Further on in the petition are these words:

"At the time said ordinance was enacted and sold and the bid and bond accepted by the city it was the intention of the parties at the said time," etc.

These allegations are not denied by the answer. The petition is therefore sufficient to sustain the judgment.

4.  The petition was not filed prematurely. The bond executed by the defendant contains these words after reciting what had occurred:

"And the principal has agreed to have installed in the City of Springfield, ready for business, a gas system as provided in the franchise connected by pipe line with a supply of natural gas adequate for service to the persons of the city on or before January 16, 1932."

The rule is that the contemporary construction of an instrument by both the parties is of great weight. The purchaser under the ordinance had a year to comply with it, and this year naturally was counted from the time that his right to the franchise accrued, which was when his bid was accepted on January 16. The ordinance, read as a whole, fairly sustains the construction given to it by both the parties at the time.

5.  It is earnestly insisted that by the ordinance the bond was to be given in thirty days after the ordinance took effect, and that the bond was not given until February 13, which was too late, and that the ordinance provided that it should be void if the bond was not given within thirty days from the date on which this ordinance takes effect. But the ordinance did not take effect as to the purchaser until his bid was accepted. He could not properly give the bond until then and very clearly the meaning of the ordinance was to give him thirty days after that to execute the bond. In addition to this the council could, if it saw proper, extend the time for the execution of the bond, and, when it so extended the time by accepting the bond, the purchaser was bound.

6. The answer in substance pleaded that the gas corporation, the purchaser of the franchise, did not own any supply of natural gas, and was engaged only in installing the gas systems in cities and towns; that the city well knew this when it accepted the company as a purchaser of the franchise, and did so under the expectation of both parties that the system so constructed would be connected with the pipe lines of some other company; that such connection could not be made, and therefore it did not put in the system in the city. But the contract is positive and contains no exception. There is no allegation of fraud or mistake in the drawing of the contract, and an exception of this sort cannot be proved to vary the positive stipulations of a contract without an allegation of fraud or mistake. These rules are well settled, and the demurrer to this paragraph of the answer was properly sustained. The denials of the answer were too broad to make an issue on any fact alleged in the petition. The essential facts on which the plaintiffs' case rested were all admitted by the answer.

7. It is earnestly insisted that the court should not have entered judgment against the defendants for $2,500, the amount stated in the bond, and that on the bond the city was only entitled to recover such damages as it in fact sustained. By section 8 of the ordinance the purchaser was required within a period of twelve months to install in the city of Springfield, ready for business, a gas system as therein provided, and by section 11 of the ordinance it was provided that the franchise should be void unless within thirty days the purchaser makes a bond in the sum of $2,500 to the city of Springfield guaranteeing his performance under section 8. If the bond had been given as required by the ordinance, the $2,500 would have been payable if the purchaser of the franchise did not comply with section 8 by installing the gas system within twelve months. Under such a bond, where from its breach the damages resulting to the city are uncertain and difficult of ascertainment, the amount specified in the bond will usually be treated as liquidated damages. See Scott's Adm'rs v. City of Mayfield, 153 Ky. 278, 155 S. W. 376; Louisville Gas Co. v. City of Louisville, 191 Ky. 797, 231 S. W. 909; 17 C. J. p. 941, sec. 237; Summit v. Morris, etc., Co., 85 N. J. Law, 193, 88 A. 1048, L. R. A. 1915E, 385, and notes.

But the bond sued on does not provide that the obligor shall pay the city $2,500 if it only failed to build the gas system as provided in section 8. It provides that the purchaser shall faithfully and fully comply with all the terms and conditions of the franchise and shall restore the streets, alleys, and sidewalks to substantially the same condition as formerly and shall pay any and all damges that may be awarded against the city on account of any negligence of the purchaser by reason of its failure to comply with the terms of the franchise. By the terms of the bond the purchaser of the franchise is required to do all these things or else pay the city $2,500. In other words, the bond requires as a condition of its violation a number of things not set out in section 8. If the purchaser failed to restore the streets, alleys, and sidewalks to the same condition as formerly or failed to pay any damages that might be awarded against the city, the purchaser and his surety in the bond may be held liable under the bond. The bond given is one for the faithful discharge of all the terms and conditions of the franchise, while the bond provided by section 11 was only a bond for the faithful performance of section 8 of the franchise which required the gas system to be put in in one year. The bond as written and accepted clearly falls within the rule stated in 17 C. J. p. 953, sec. 249:

> "The general rule is that, where a contract stipulates for the performance of several acts, and the actual damages on a breach of some of such acts would be difficult of ascertainment, but readily computed on breaches of others, a sum stated therein to be paid on a breach will be held to be a penalty and not liquidated damages. The sum named cannot be regarded as a penalty as to part of the provisions of the contract and as liquidated damages as to the other part; if it is not liquidated damages as to one of the covenants, it cannot be so as to the others."

This rule is supported by the great weight of authority and was followed by this court in Louisville Gas Co. v. City of Louisville, 191 Ky. 789, 231 S. W. 918. It necessarily applies here in view of the form of the bond accepted by the city. The actual damages on a breach of some of the things covered by the bond may be readily computed, and the sum stated in the bond to be paid on its breach must be held to be a penalty and not liqui-

dated damages. The city may recover on the bond the actual damages sustained, not exceeding $2,500. But the amount of the damages must be determined as in other cases of unliquidated damages. Summit v. Morris, etc., Co., 85 N. J. Law, 193, 88 A. 1048, L. R. A. 1915E, 385 and notes.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.

The whole court sitting.