No. 31,304

The City of Kansas City, *Appellee*, v. The Industrial Gas Company and The National Surety Company, *Appellants*.

(28 P. 2d 968.)

Opinion filed January 27, 1934.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave*, all of Kansas City, and *Henry L. Jost*, of Kansas City, Mo., for the appellants; *C. A. Randolph, Stanley Garrity* and *Alfred Kuraner*, all of Kansas City, Mo., of counsel.

*Alton H. Skinner, John C. O'Brien, James K. Cubbison* and *William H. Towers*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action on a bond given to secure the performance of obligations in an ordinance granting a natural-gas franchise. The trial court sustained plaintiff's motion for judgment on the pleadings. Defendants have appealed.

Plaintiff alleged its incorporation and that of defendants; that on November 8, 1927, plaintiff passed a certain ordinance, which was approved by the mayor and duly published, and which was submitted to and adopted by the electors of the city at a special election called for that purpose and held April 17, 1928; that the grantee named in the ordinance (as the ordinance specifically authorized him to do) assigned his interest to the defendant, the Industrial Gas Company; that on June 25, 1928, the Industrial Gas Company filed with the city clerk its written acceptance of the ordinance, and also executed as principal, and the National Surety Company as surety, its bond, sued on herein, in the sum of $50,000, and filed the same

with the city finance commissioner, which acceptance and bond were received and duly approved. Copies of these instruments and of the ordinance are attached, as exhibits, and made part of the petition. The ordinance granted to one Knorpp the right, privilege and franchise for a period of twenty years from the date of the acceptance of the ordinance, to construct and operate pipes, mains, and other necessary equipment for the supplying and distributing of natural gas for industrial purposes to the city and its inhabitants. It provided that within 120 days after the passage of the ordinance the grantee shall file with the city clerk his acceptance thereof in writing; that within thirty days after such acceptance the grantee agrees to begin the construction of a pipe line to transport natural gas to Kansas City, Kan., from the Amarillo, Tex., gas fields, and a system of pipe lines for the distribution of such natural gas to industrial users within the city, and to complete the pipe line and distribution system "within one year from the date of such commencement thereof, subject to extension of said time equaling delays . . . caused by acts of God, the elements, labor troubles, accidents, and any and all other causes not reasonably within the control of the grantee." That at the time of filing such acceptance the grantee shall file a bond in the sum of $50,000, executed by an authorized solvent surety company, "conditioned that the grantee will within the time in this ordinance provided, cause to be completed a pipe line to transport natural gas to Kansas City, Kan., and begin the construction of a distribution system within said city for the transportation and distribution of natural gas to industrial users within said city as provided in section three (3) of this ordinance. Because of the difficulty of ascertaining and determining the actual damages which shall be sustained by said city in the event of failure of grantee to cause said pipe line and said distribution system to be built within the time herein specified, said sum of fifty thousand dollars ($50,000) is hereby agreed upon as liquidated damages which would in such event be sustained by said city."

Other sections of the ordinance contained appropriate provisions, not especially pertinent in this action. Section 10 sets out the rates to be charged consumers of gas; section 11 provides that the grantee, if requested by the city, will enter into an agreement to furnish gas for domestic use, at a stated price and under certain conditions; section 12 provides how contracts with consumers may be made at less than the scheduled rate; by section 13 the grantee agrees to pay

$2,000 to the city annually during the life of the ordinance; section 14 contains a forfeiture provision, and by section 15, when the ordinance is accepted, the terms, provisions, obligations and conditions thereof are binding on the acceptor and his or its heirs, successors and assigns. The provisions of sections 16, 17 and 18 are not especially pertinent here. By section 19 "this ordinance shall take effect and be in force from and after the expiration of sixty (60) days from its final passage and publication in the official city paper and its acceptance by the grantees as herein provided." The bond executed by defendants is in the sum of $50,000, conditioned that:

"Whereas, by the terms of ordinance number 23928, passed by the board of commissioners of Kansas City, Kansas, on November 6, 1927, granting to John L. Knorpp, his heirs, successors and assigns, a natural-gas franchise, in said ordinance more fully described, it is provided that the grantee therein shall within thirty (30) days after the acceptance of said ordinance by the grantee cause to [be] begun construction of a pipe line of at least twenty (20) inches in diameter to transport natural gas to Kansas City, Kansas, from the Amarillo, Texas, gas fields, and a system of pipe lines for the distribution of said natural gas to industrial users within said city of Kansas City, Kansas, and that said pipe line and distribution system shall be completed within one year from the date of such commencement thereof, subject to an extension of said time equaling delays in such construction caused by the acts of God, the elements, labor troubles, accidents and any and all other causes not reasonably within the control of the grantee; and

"Whereas, the Industrial Gas Company, the principal named in this obligation, has acquired all the rights, powers and privileges of John L. Knorpp, named as original grantee in said ordinance; and

"Whereas, said Industrial Gas Company has, concurrently with the filing of this bond with the commissioner of finance and revenue of said Kansas City, Kansas, filed with the city clerk of said Kansas City, Kansas, its acceptance in writing of the provisions, terms, obligations and conditions of said ordinance.

"Now, therefore, if the construction of said pipe line and of said distribution system shall be begun and be completed within the respective times provided in said ordinance for the beginning and completion, respectively, of said pipe line and of said distribution system, then the obligation of this bond shall be void; otherwise it shall remain in full force and effect."

The petition alleged the pertinent provisions of the ordinance, its acceptance by the Industrial Gas Company, the execution and filing of the acceptance of the ordinance and of the bond and the approval of these instruments, and the default of defendants, in that they had failed to construct the pipe line and the distribution system, although the time for doing so has elapsed; that demand had been made on defendants for payment of the amount of the bond, which

demand had been refused, and prayed judgment for liquidated damages in the amount of the bond, with interest since the demand.

The answer of the National Surety Company admitted the incorporation of the parties, and "the passage and approval, the publication, the special election and the assignment of said ordinance," and "the execution, delivery, filing and approval of the bond for $50,000," all as alleged in the petition; and admitted "the acceptance in writing of said ordinance." As to this last admission an amendment to the answer was made later by leave of court, in which it was admitted the Industrial Gas Company filed a written acceptance of the ordinance June 25, 1928, but alleged the "acceptance was of no force or effect because it was provided in said ordinance that within one hundred and twenty (120) days after the passage of said ordinance the grantee therein, or his assignee, the Industrial Gas Company, should file with the city clerk of said city an acceptance in writing of the provisions, terms, obligations and conditions of said ordinance; that it was further provided in said ordinance that if within one hundred and twenty (120) days from the passage of said ordinance, its terms, provisions, obligations and conditions should not be so accepted, then said ordinance should be void; that said ordinance was passed by the board of commissioners of said city November 8, 1927; was approved by the mayor of said city November 15, 1927, and was published in the official city paper November 16, 1927; that no acceptance of said ordinance was filed with the city clerk of said city until June 25, 1928, which was more than 120 days after the passage of said ordinance and therefore said ordinance became void and there was no consideration for the giving of said bond."

Further answering, defendants denied all allegations of the petition not admitted, and alleged as affirmative defenses certain matter which may be summarized as follows: That the time of performance under the ordinance was extended by delays beyond the control of the grantee in this, that at the time of the passage of the ordinance the grantee disclosed to the governing body of the city that the construction of the pipe line and distribution system provided for by the ordinance was a part of a general project which contemplated the construction of distribution systems for natural gas for industrial purposes in many other cities situated between the fields where the gas was produced and Kansas City, Mo.; that the principal distribution system to be constructed as an essential part of the

project was that for Kansas City, Mo., and plaintiff's governing body was advised that it would not be possible to construct the pipe line and distribution system for Kansas City, Kan., unless and until all necessary legal permissions were obtained to construct and operate the distribution system in Kansas City, Mo.; that this could not be done unless the Public Service Commission of the state of Missouri issued to the grantee, or those associated with him, its certificate of convenience and necessity authorizing the construction and maintenance of the distribution system in Kansas City, Mo.; that application for such a certificate had been made and had not been allowed, for which reason, beyond the control of the grantee, it became impossible to construct the pipe line and distribution system for Kansas City, Kan., provided for by the ordinance, and for which reason there had been no default on behalf of the grantee.

It was further alleged that the provisions of the ordinance, and the bond for the payment of $50,000 constituted a penalty and not liquidated damages; that plaintiff has, in fact, sustained no damages, but, on the other hand, has received certain benefits.

It was further alleged that it was not within the corporate powers of plaintiff to take from defendants a bond for the purpose of making a profit.

It was further alleged that the grant of the franchise by the ordinance was legislative in character and could have no extraterritorial effect, and that the bond given was void because the conditions thereof attempt to operate extraterritorially with respect to building the pipe line from the gas fields of Amarillo, Tex., to Kansas City, Kan.

The Industrial Gas Company adopted for its answer the amended answer of the National Surety Company.

Plaintiff's reply denied matters alleged as affirmative defenses in the answer. Its motion for judgment was upon the grounds that the answers failed to state a defense to the action. Judgment for plaintiff was proper on this motion if the answers pleaded no defense. In determining whether defenses were pleaded by the answers they should be construed as favorably to the defendants as though they had been attacked by demurrer.

Broadly speaking, the principal defenses pleaded in the answers and relied upon here are three: *First,* that the ordinance was void for the reason it was not accepted within time. *Second,* that the

ordinance was enacted and accepted upon a condition not mentioned therein, namely that the Industrial Gas Company could obtain a certificate of convenience and authority from the corporation commission of Missouri to construct pipe lines and distribute gas in the state of Missouri and a franchise for the distribution of gas in Kansas City, Mo., which it had endeavored to obtain, but had been unable so to do. *Third,* that the sum of $50,000, provided in the ordinance for which the bond sued on was given, is a penalty and not liquidated damages. We shall discuss these in the order named.

, *First.* Was the ordinance void for the reason it was not accepted within time? Three answers suggest themselves to this contention: (1) The ordinance was in the nature of a proposition for the entering into of a contract. One who makes such a proposition and fixes a time for its acceptance may waive the time, and the party accepting it after the time fixed, with knowledge of the fact, cannot be heard to complain. (2) The grantee of a franchise who accepts it in any affirmative way, even by conduct, as by operating under it, cannot be heard to say that it has not been accepted. In this case it is alleged in the petition, and admitted in the answers, that the ordinance was accepted. One provision of the ordinance specifically states that if it is accepted it shall be binding upon the grantees. Appellants argue that estoppel is not pleaded. The facts are pleaded, hence it is no longer important whether the term estoppel, or what term, or that no term, was applied to the conduct. (3) This question is predicated upon definitions of words and analysis of terms too minute to be substantial. It is true the ordinance says it must be accepted within one hundred and twenty days after its passage, and it is pleaded in the petition it was passed November 8, 1927, and that it was accepted on June 25, 1928. Since the ordinance provides that if it is not accepted within the time mentioned it shall be void, appellants argue that the facts pleaded demonstrate it was void. But these facts are not the only ones to be considered. The ordinance was necessarily passed under the authority and in view of the provisions of our statute (R. S. 13-2801) which, among other things, provides (paragraph 6):

". . . If, pending the passage of any such ordinance or during the time intervening between its final passage and the expiration of sixty days before such ordinance shall take effect, ten per cent of the legally qualified voters of such city voting for mayor at the last preceding city election shall present a

petition to the board of commissioners asking that such franchise ordinance be submitted for adoption to popular vote, then it shall be the duty of the mayor of such city to issue a proclamation calling a special election for such purpose. The proclamation calling such special election shall specifically state that such election is called for the adoption of the ordinance granting such franchise, . . ."

When an election is held, as provided by this statute and as it was in this case, there is reason to say that the ordinance is not adopted and hence has not been passed and is only pending passage until a majority vote for it at the election. All of this machinery goes to the enactment of the ordinance, and hence to its passage. The acceptance in this case was within sixty days after the election at which the ordinance was adopted, and hence was within time.

*Second.* Do the facts pleaded with reference to an understanding that the ordinance should not be in effect unless the Industrial Gas Company was able to get a certificate of convenience and authority from the public service commission of Missouri, and the franchise in Kansas City, Mo., constitute a defense? Our statute (R. S. 13-2801) provides:

*"First.* All contracts granting or giving any such original franchise, . . . shall be made by ordinance, and not otherwise."

This statute would be nullified if side agreements, not embodied in the ordinance, were to control as to validity. A similar contention was held to be without merit in *City of Topeka v. Industrial Gas Co.,* 135 Kan. 646, 11 P. 2d 1034. (Certiorari denied, 287 U. S. 658.)

*Third.* Is the provision in the ordinance respecting the payment of $50,000, and the same sum named in the bond sued upon, a penalty or liquidated damages? This is the principal point in this controversy. Much has been said by text writers and in the opinions of courts as to whether a sum named as damages for the breach of a contract is, or shall be, construed to be a penalty or liquidated damages. See 17 C. J. 934 *et seq.;* 8 R. C. L. 559 *et seq.;* Restatement of the Law of Contracts, §§ 326 to 346, and cases collected in American Digest under "Damages," §§ 74 to 86.

A résumé of these authorities, so far as here pertinent, may be stated thus: When by its judgment a court allows to one party to a contract a sum of money as damages for its breach by the other, the sum allowed should be compensatory in its nature; that is, it should restore in value to the injured party that which he has lost by the breach of the contract by the other party. Sometimes it is

easy to measure in dollars and cents the damages caused by a designated breach of a particular contract; at other times it is more difficult, and experience has developed certain rules applicable to certain cases, or classes of cases, to be applied by courts and juries in determining the sum for which judgment should be rendered, and such rules, when properly applied, give a fairly accurate measure of the sum necessary to compensate the injured party. In certain other contracts damages obviously will result from the breach by the parties, and their respective situations and the subject matter of the contract and the purposes sought to be accomplished by it are such that it is extremely difficult, if indeed it is possible, to formulate practical rules for measuring damages which will result from a breach of the contract. With respect to such contracts and their breach it is said in Restatement of the Law of Contracts, § 339 [1] comment c:

"Where the amount of loss or harm that has been caused by a breach is uncertain and difficult of estimation in money, experience has shown that the estimate of a court or jury is no more likely to be exact compensation than is the advance estimate of the parties themselves. Further, the enforcement of such agreements saves the time of courts, juries, parties, and witnesses and reduces the expense of litigation. In such cases, if it is not shown that the principle of compensation has been disregarded, the liquidation by the parties is made effective."

The contract before us is of this character. In *City of Topeka v. Industrial Gas Co.*, supra, a case very similar to this, it was said:

"If there ever was a case where the bond should be for liquidated damages rather than for a penalty this is it." (p. 653.)

So far the parties agree on the rules of law applicable to this case. But appellant points out that by the terms of the bond sued on the stipulated sum is payable for the breach of any one of several conditions which vary in degrees of importance. The general rule with respect to that is well stated in Restatement of the Law of Contracts, § 339 (1) comment b, as follows:

"Contracts are frequently made in which performances of very different degrees of importance and value are promised and one large sum of money is made payable as damages for any breach whatever. Since such a contract promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract, it is obvious that the parties have not adhered to the rule of just compensation. In this matter neither the intention of the parties nor their expression of intention is the governing consideration. The payment

promised may be a penalty, though described expressly as liquidated damages, and *vice versa.*"

It will be observed that under this statement of the rule it is not every instance in which a stipulated sum is to be paid for the breach of performance of conditions varying in degrees of importance that the sum will be regarded as a penalty. With respect to this rule, after stating it, it is said, in 8 R. C. L. 572:

"The rule above stated has, however, its exceptions and modifications, and it has been held not to apply where the contract has but one primary purpose regardless of its form, or where the contract does not discriminate between the several covenants in specifying the damages, and all of them are of an uncertain nature in respect to the amount of injury a breach will cause." (Citing authorities.)

Others may be found in the notes in L. R. A. 1915E 394. In this case the ordinance must, of course, be construed with the bond, and it is clear from reading both of them that the primary purpose to be accomplished by the contract was to have the pipe line and distribution system completed within the year provided for their completion. Part work on one or both, or the completion of one and not the other, obviously would accomplish no beneficial result. Obviously the parties so understood it. Their intent was to treat all that was to be done as necessary to accomplish their purpose, and their intent is important to be taken into account. (See cases collected in 78 A. L. R. 846.)

Appellant argues that the stipulated amount, $50,000, is so unreasonably large as to require that it be construed as a penalty rather than as liquidated damages. With that contention we cannot agree. In matters of this kind the city acts not only for itself as a corporate entity, but, in a measure at least, for the benefit of its inhabitants. One of the benefits the city as a corporate entity would have received had this contract been carried out is the payment of $2,000 per year for twenty years, and it is easy to conceive that the benefits to the city and its inhabitants would be much greater than the stipulated sum. On this point compare *Pacific Dock & Terminal Co. v. Los Angeles Dock & Ter. Co.*, 42 F. 2d 496.

We find no error in the record. The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.