No. 33,066

J. W. Owen, *Appellee*, v. V. B. Christopher, *Appellant*.

(62 P. 2d 860)

Opinion filed December 12, 1936.

*E. C. Wilcox, J. Howard Wilcox* and *Myrtle Youngberg,* all of Anthony, for the appellant.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellee.

The opinion of the court was delivered by

Smith, J.: This action was one to enforce specific performance of a contract for the exchange of real estate and in the alternative

to recover damages for the failure to complete and carry out the agreement in the event the contract could not be executed.

The contract for the exchange of properties was in writing and was signed by the plaintiff and the first-named defendant, who had been the husband of the last-named defendant, but they had been divorced and she was living in Texas. The contract was attached to and made a part of the petition. The plaintiff alleged he was ready, able and willing to fully comply with the terms of said contract on his part, but that the defendant, V. B. Christopher, refuses to comply with the terms of said exchange contract, because he was not the full legal owner of the real estate purported to be traded by him, but that his former wife, Laura Christopher, was the owner of an undivided one-half interest therein and she refuses to join in the deed. The petition contains further allegations concerning an agreement between the two defendants as to the former wife conveying her interest in the property for $1,400. The answer of the defendant, V. B. Christopher, contained a general denial and several special denials, among which was a denial that he represented to the plaintiff that he was the sole owner of the property which was to be traded to the plaintiff, but that the plaintiff at all times knew and understood that defendant's former wife was the absolute owner of a one-half interest in such real estate. A reply in the form of general and special denials was filed to this answer and the trial was had to the court without a jury.

The court made extended findings of fact, followed by the following conclusions of law:

"1. That inasmuch as no practical plan has been suggested to the court and none conceived by the court by which specific performance with abatement in price can be decreed in a legal and equitable manner under the terms and conditions of the contract entered into between the parties, specific performance of the contract should be denied.

"2. That plaintiff should be awarded damages against the defendant, V. B. Christopher, in the sum of $700, and that said sum should be made a lien upon the undivided one-half interest of V. B. Christopher in said Harper county lands hereinbefore described with remedies of enforcement as provided by law and to be resorted to within a reasonable time from the date of the rendition of judgment herein.

"3. That judgment in favor of the plaintiff for costs against the defendant, V. B. Christopher, should be awarded.

"4. That judgment in favor of the defendant, Laura Christopher, should also be entered."

Judgment was rendered in favor of plaintiff and against defendant

V. B. Christopher according to the conclusions, from which he appealed, assigning many errors.

In the second and third findings of fact the court found that the defendants were each the owner of an undivided one-half interest in the Harper county land described in the exchange contract, a one-half interest being awarded Laura Christopher in a decree of divorce obtained by her against V. B. Christopher about five years before the trial of this action.

One of the errors assigned was the failure and refusal of the trial court to make a finding as to whether or not the plaintiff, Owen, had notice or knowledge of the title or interest in the Harper county real estate held by Laura Christopher at the time of entering into the contract of exchange. This was an allegation of the defendant as above outlined, and was denied by the reply of the plaintiff so that the burden of proof was on the defendant to establish this allegation. The court was furnished in advance with suggested findings of fact by the defendant which contained such a finding, but the court made no finding on that question. Later the defendant filed objections to the findings and again requested the making of a finding on that question, either that plaintiff did or did not have such knowledge or notice of the interest of the former wife in the land at the time of the making of the contract of exchange. The court overruled this objection and request, and later overruled the motion of defendant for a new trial.

The abstract is said to contain all the evidence on both sides as to this question of the plaintiff's having knowledge of the interest of the former wife in this land when the contract was made. Even if it contained a sharp conflict, the trial court could and should decide the matter on the credibility of the witnesses, but a careful reading and re-reading of all the evidence on this question does not make the impression that a serious conflict existed. Most of the testimony was concerning $1,400 due the former wife from the defendant and the efforts of the defendant to get that amount so as to pay her. There was something said about her willingness to sign a deed when paid the $1,400 and a letter written by her to that effect having been shown the plaintiff, but that would not show she was a part owner of the land. There was a mortgage of $5,700 on the farm, the payment of which amount, of course, would be claimed by the mortgagee, but that would not indicate that the mortgagee was a part owner of the property. There was no necessity of the court finding the negative

of this issue raised by the answer of the defendant. It would accomplish no purpose unless the finding was in the affirmative, that the plaintiff did have knowledge or notice of her part ownership of the land when he signed the contract. It is not difficult to conclude that the defendant did not show by the greater weight of the evidence that plaintiff did have such knowledge or notice when he entered into the contract of exchange with the defendant.

Appellant cites, among other authorities in this connection, the case of *Redden v. Bausch*, 110 Kan. 625, 204 Pac. 752, where the jury found that the purchaser did not know that the contracting party had only a life estate when the option agreement was made. This answer was set aside by the trial court as untrue and the inference was that he did know. It was there held that the purchaser had no right to insist on either specific performance or damages.

So the contention of the appellant was along the correct line if his evidence had been strong enough to justify an affirmative finding. We find no error in the court's failing to make a finding of fact on this issue raised by defendant's answer when the evidence did not warrant a finding in favor of the issue thus raised, as a negative finding would accomplish nothing for either party.

Appellant urges that the findings are not supported by the evidence. We think there was ample evidence to support the findings. There is a matter of law as to the items of damage which we will consider later. We find no error in the admission or rejection of evidence.

Did the court err in its conclusions of law, and are the conclusions supported by the findings of fact? In this connection appellant calls attention to the findings of fact with reference to damages, where the court found three items of special damage:

| | |
|---|---:|
| Seed furnished | $19.77 |
| Agent's commission | 100.00 |
| Cost of abstract | 54.50 |
| Total | $174.27 |

In the next finding the court found what the value of the different tracts of land included in the exchange was, "as understood by the parties" at the time of the exchange, which makes a difference of only $200, but the court in the same finding calls attention to the fact that the contract undertook to stipulate the amount of damages at $500, should either party fail to comply with the terms

of the contract, and then the court in the same finding found that plaintiff's damages were $500 plus his expenses of $174.27. It is stated in connection with this finding that the court later changed the total damages to $700.

There was ample evidence introduced on the trial, and shown in the abstract, to show the equity in the Harper county land above the $5,700 mortgage to be greatly in excess of $2,800. The defendant himself testified the farm contained 194 acres and was worth from $60 to $65 per acre. So there is no question about the evidence being sufficient to support the finding of more than $500 as the difference in the value of the land, or the profit in the exchange of real estate which the plaintiff lost by the failure of defendant to carry out the contract. The exact language of the exchange contract with reference to the stipulated damages or forfeiture is as follows:

"And further both parties hereby bind themselves, their heirs, in the sum of $500 as forfeit to the other party in case of failure to comply with the provisions of this contract."

That the difference in value of the properties exchanged may be an element of damage in a case like this is supported by the decision in the case of *Stramel v. Hawes,* 97 Kan. 120, 154 Pac. 232, where the party who was ready, able and willing to carry out the terms of the contract recovered a judgment against the other party to the contract of $4,520, as the difference between the values of the properties because of inability to fulfill the contract.

In the case of *Nicholson v. Fawley,* 112 Kan. 124, 210 Pac. 482, which was an action for specific performance or damages in the alternative, damages were allowed, and later approved by this court, for real estate commission and also for the farm remaining idle for a year on account of the controversy.

In the case of *McAdam v. Leak,* 111 Kan. 704, 208 Pac. 569, it was held:

"In an action brought by the purchaser on account of the refusal of the vendor to perform a contract for the sale of land the difference between the agreed price and the market value at the time of the breach is held to have been the proper measure of damages . . ." (Syl. ¶ 5.)

All three of these cases last cited were specific performance cases. It is suggested that damages are not usually obtainable in equity cases, but R. S. 60-601 changed the common law in that respect by permitting equitable and legal causes of action to be united in the

same petition, as in the case at bar. The language of said section is as follows:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both."

In *Henry v. McKittrick*, 42 Kan. 485, 22 Pac. 576, it was held:

"Where a petition sets forth facts sufficient to constitute a cause of action for the specific performance of a contract to sell and convey real estate, and also to authorize a recovery of damages for the refusal on the part of the defendant to specifically perform his contract, and prays that the defendant may be compelled to specifically perform his contract, or that, if for any sufficient reason a specific performance of the contract cannot be compelled, then that the plaintiff may recover damages, *held*, that only one cause of action is stated in the petition, and that several causes of action are not improperly joined." (Syl. ¶ 2.)

In *Stramel v. Hawes*, supra, it was held:

"Although specific performance is still an equitable remedy the granting of which rests in the discretion of the court, the code has abrogated the rule which formerly obtained, that a judgment for damages will not be awarded where specific performance is found impossible unless the court in its discretion and upon a consideration of the equities concludes that it is just and equitable.

"The rule which formerly obtained, that where a party knows at the time he brings suit for specific performance that the contract cannot be specifically performed or decreed he will not be allowed to recover compensation in the way of damages, has also been abrogated by the code." (Syl. ¶¶ 2, 3.)

In the recent case of *Nelson v. Schippel*, 143 Kan. 546, 56 P. 2d 469, it was said:

"It is proper in an action for specific performance to plead in the alternative and ask for damages for nonperformance." (p. 548.) (See the many cases cited in support of the statement above quoted immediately following the same.)

Damages are recoverable even where the defendant did not have full title at the time he contracted to sell or exchange the same. In the *McAdam* case, supra, it was held:

"The fact that the vendor did not have full title to the land contracted to be sold is not a defense to an action by the purchaser for damages for breach of the contract by failure to convey." (Syl. ¶ 2.)

This was an action for specific performance or damages in the alternative.

In *Williams v. Wessels*, 94 Kan. 71, 145 Pac. 856, it was held:

"Where the owner of land in Kansas, whose wife has at one time been a resident of the state, contracts for its sale, agreeing to convey a full title, and

his wife refuses to join in the deed, the purchaser may enforce specific performance against the husband . . ." (Syl. ¶ 4.)

In the case last cited it was further held that such specific performance might not only be enforced against the husband, but against any one who claimed under him with notice of the contract, by receiving an abatement in the agreed purchase price to the extent to which the value of the title he obtained is diminished by the outstanding interest of the wife. This feature is referred to because of the discussion in the briefs about liquidated or stipulated damages. It is not applicable to the judgment rendered by the court inasmuch as the court concluded that no practical plan had been suggested or was conceived by the court by which specific performance with abatement in price could be decreed under the contract.

Did the parties to the contract of exchange in this case fix a limit for extent of damages in case the contract should be forfeited by either party?

It is said in 8 R. C. L. 559:

"As a general rule the parties to a contract may stipulate in advance as to the amount which shall be paid in compensation for loss or injury which may result in the event of a breach of agreement, at least in those cases where the damages which would so result are not fixed by law, and where the amount stipulated does not manifestly exceed the injury which will be suffered." ·

This paragraph goes on and distinguishes stipulated or liquidated damages from a penalty. We think it is not a penalty in the case at bar but is a proper stipulation or limitation upon damages. Of course, if there are no damages suffered, the full amount could not be recovered. Nothing would be allowed in such case but nominal damages.

Restatement, Contracts, § 339, defines liquidated damages as follows:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless—

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

It is stated in 17 C. J. 931, under the heading of liquidated damages, that—

"The parties to a contract may, where the damages consequent upon a breach are of an uncertain nature, estimate them in advance of a breach and

agree upon their measure, and such an agreement when entered into in good faith will be enforced."

It was said in *Davidson v. Hughes*, 76 Kan. 247, 91 Pac. 913:

"When at the execution of an oil-and-gas lease only one dollar is paid to the grantors therefor, and the grantees agree, as the principal consideration, to complete three wells on the premises within twelve months from the execution of the contract or to pay $500 'as a forfeit,' such agreement of payment on default will be regarded as a provision for liquidated damages and not as a penalty." (Syl. ¶ 2.)

In *City of Topeka v. Industrial Gas Co.*, 135 Kan. 646, 11 P. 2d 1034, it was said:

"Where a bond is given to secure the performance of the conditions of an ordinance and the ordinance provides that the bond shall be for liquidated damages, and the actual damages would be difficult to ascertain and prove by any pecuniary standard, and uncertain in their nature, the bond will be construed as one for liquidated damages rather than for a penalty." (Syl. ¶ 4.)

The same subject was thoroughly discussed in the later case of *Kansas City v. Industrial Gas Co.*, 138 Kan. 755, 28 P. 2d 968, and it was held that the sum named in the bond for the performance of the obligations in an ordinance of a city by a natural gas company was properly construed as liquidated damages.

We have no hesitancy in construing this provision in the contract as stipulated or liquidated damages, and therefore limiting the extent of the damages of whatever nature under the terms and provisions of the contract. We have heretofore stated there was authority for the allowance of damages in a case like this for commission paid real estate agents and for loss of profit and gain in the value of the properties exchanged, but we conclude that the stipulation meant to limit all such loss to $500, and therefore the judgment for $700 should be reduced by $200.

Appellant has raised a serious question as to the judgment being an equitable lien. It could very properly have been such if it had been a part of a decree of specific performance, or even an abatement, as was noted in a case above mentioned, but in the case at bar the entire judgment is under the damage part of the action since the trial court was not able to conceive of any practical plan of specific performance or abatement under the facts and circumstances. We think the damages recoverable by the plaintiff have been recovered wholly by virtue of that part of the action, which is in itself an action at law. They are recoverable on the contract and should not

be enforced by or on the principles of equity. (See *Thomas v. Neloms*, 104 Kan. 366, 179 Pac. 307; *Felzien v. Wieck*, 118 Kan. 194, 234 Pac. 944; and 58 C. J. 1263.)

The judgment is modified by reducing it from $700 to $500 and enforced from and after the day it was originally rendered as a judgment at law on the property of the defendant. As modified the judgment is affirmed.