The opinion of the court was delivered by
This was an action to recover on a personal bond given to secure performance of a contract to purchase a certain flour mill. Plaintiffs prevailed and defendants appeal. *Page 722 
The principal questions presented are whether the contract provided for a penalty or for liquidated damages in case of default; whether appellees were parties entitled to bring the action; and whether the court erred in holding that a certain "memorandum" was later merged into or superseded by another instrument, designated "contract."
One F. P. Beck, a resident of Cloud county, died testate on January 31, 1937. In his will he directed, among other provisions, that a flour mill which he owned, known as the Simpson mill, in Cloud county, be sold by the named executrix and executor and thereby converted into money. On August 23, 1937, the executrix and executor, with the consent and approval of the probate court, entered into a contract with one Ezra Megli for the lease and purchase of the mill. Written consent to this contract was given by appellees and the other heirs. The purchase price agreed upon was $10,000. Megli was to have immediate possession, was to pay stated amounts as rental, at specified times, and on or before October 1, 1940, was to make a first payment of $2,500 on the purchase price. The remaining payments were to be not less than $1,000 annually, with a final payment of $500 on the last year. It is unnecessary to recite provisions of the contract not involved in this review. The provision, principally in issue here, was as follows:
"If the purchaser defaults in fulfilling this contract or any part thereof, strictly according to its terms, then the vendors shall have the right to declare this contract forfeited, in which case the purchaser shall on ten days' notice in writing surrender possession of said property, forfeiting all payments theretofore made under this contract, and said purchaser shall in addition quitclaim his rights under this contract and pay the sum of five hundred dollars ($500) to the vendors as liquidated damages, to secure the payment of which and full performance of all the other terms of this contract said purchaser agrees to furnish forthwith a bond in the penal sum of five hundred dollars ($500) with one or more good and sufficient sureties satisfactory to the vendors."
In compliance with the above provision of the contract, a bond was executed on September 1, 1937, with appellants — Ezra Megli as principal, and George Megli and Fred Boehner as sureties. The bond was as follows:
"Know all men by these presents, that we, Ezra Megli, as principal, and Ezra Megli, and George Megli and Fred Boehner, as sureties, are held and firmly bound unto Margretha Groves Shamburg and Frederick E. Beck, jointly as executor and executrix of the will of F. P. Beck, deceased, in the sum of five hundred dollars ($500), for the payment of which well and truly to be made we hereby bind ourselves, our heirs, executors, administrators and assigns, firmly by these presents; *Page 723 
"The condition of this bond is that whereas the said principal and the said executrix and executor have entered into a certain contract in writing dated August 23, 1937, by the terms of which said principal has agreed to purchase certain real property, to make certain payments thereon at specified times and to do and perform other acts:
"Now, therefore, if the said principal shall purchase said property and pay therefor and do and perform all the terms and conditions of said contract strictly according to its terms, then this bond shall be void, otherwise to be and remain in full force and effect."
Ezra Megli went into possession of the mill and made certain payments of rent, but made no payment upon the purchase price. The instant action to recover on the bond was filed September 9, 1939. It was brought by appellees under claim of ownership of the property as heirs and residuary legatees, and as assignees of the interests of other such heirs and legatees. A copy of the order of final settlement was made a part of the petition.
The petition set forth the will, the contract and bond, and alleged that Ezra Megli went into possession of the mill in September, 1937, and remained in possession and control until April 1, 1939, at which time he vacated and abandoned the property; that he made certain payments of rent — not necessary to recite here in detail — and that he was in default as to a number of rental payments and had forfeited all rights under the contract. Judgment was asked for $500, the amount fixed in the bond.
Defendants alleged in their answer that the full contract had not been set out in the petition, and that a "memorandum" agreement, dated August 23, 1937 (the same date as the contract pleaded in the petition), which they submitted as part of their answer, constituted a part of the contract. It was further alleged that the execution of the contract and bond had been secured by fraud and misrepresentation; that the bond was insufficient in law and was not in accord with the "memorandum" agreement referred to; that the bond was made payable to the executor and executrix, had not been assigned to plaintiffs and that plaintiffs had no right to maintain action on the bond; that the plaintiffs had failed to make certain repairs in accordance with the "memorandum" agreement and had otherwise failed to perform their obligations under the contract; that there was no valid consideration for the contract "in that the mill property was only suitable for junk"; and that the action was prematurely brought. Because of such facts, as alleged, the defendant elected "to forfeit and terminate said contract and all liabilities *Page 724 
thereunder." In addition to a general denial, the reply contained various allegations not necessary to recite. Motions to strike certain portions of the answer, and for judgment on the opening statement and the pleadings were made and overruled.
Trial by a jury was had and verdict rendered for the plaintiffs in the sum of $500 with interest as prayed for. The jury also answered special questions as follows:
"Did the plaintiffs, or the executors, or either of them, make any representations of fact to Ezra Megli which were false and which induced him to enter into the contract? A. No.
"Did Ezra Megli examine the mill, and the machinery and equipment, therein, before he signed the contract, and if so, how many times? A. No.
"Did the mill make good flour during the last time it was operated before Megli went into operation? A. Not all the time.
"When Ezra Megli abandoned the property on March 31, 1939, did he then intend to pay any more rental, or to pay any part of the purchase price? A. We don't know.
"Did the plaintiffs and defendant, Ezra Megli, mutually agree that the payment of $500 was in full for all rent up to the first day of April, 1939? A. Yes."
Defendants moved for judgment on the answers to the special questions notwithstanding the general verdict "for the reason that the answers to the special questions show that the plaintiffs' cause of action was prematurely brought." They also moved that the answer to question number 1 be set aside. The motions were overruled as was a motion for a new trial.
We first consider appellants' contention that appellees were not parties qualified to bring action on the bond. The argument is that the bond was made to the executor and executrix who entered into the contract in compliance with the terms of the will and with the approval of the probate court, and that they alone could bring the action in the absence of formal action by the probate court transferring to appellees such rights as the executor and executrix had under the bond. We cannot agree with the argument. In the order of final settlement of the estate the probate court found that a stipulation had been entered into between all the interested devisees and legatees for distribution of the residue of the estate both real and personal. It confirmed this agreement and ordered distribution in accordance with it. Under the order the mill property went to the appellees and to two others whose interests they acquired by assignment. The estate had been closed and it is undisputed on the record that appellees are the real parties in interest as to the mill *Page 725 
property and the contract for its sale. Their ownership in the property was subject to the sale contract. Certainly Megli could have enforced the contract as against them. Being bound by the obligations of the contract, they were entitled to enforce the vendors' rights under the contract. The bond was given to secure performance of the contract. The trial court rightfully held that they were proper parties to maintain the action. (G. S. 1935, 60-401; 47 C. J. pp. 33-35;Crowell v. Ward, 16 Kan. 60; Mfg. Co. v. Burrows, 40 Kan. 361, 363,19 Pac. 809; Braden v. Neal, 132 Kan. 387, 390, 295 Pac. 678; Hudson v.Barratt, 62 Kan. 137, 140, 61 Pac. 737.)
We next note appellants' contention that the contract and bond provided for a penalty rather than for liquidated damages in case of default, that the court erred in holding otherwise, and that the verdict cannot stand because no testimony was offered tending to show the actual damages suffered by plaintiff, as a result of defendants' default. It must be kept in mind that this action is to enforce the obligation of the bond. That obligation — whether or not it be called a penalty — was to pay the sum of $500 if Megli failed to carry out his part of the contract. Under the contract he not only agreed to pay certain rentals and thereafter to make certain payments on the purchase price until full payment had been made, but in case of default in fulfilling the contract or any part of it, to surrender possession, to forfeit payments made and pay $500 "as liquidated damages." The provision in the bond is not designated either as "penalty" or as "liquidated damages," though a reasonable construction would seem to be that it partakes of the nature of the corresponding provision in the contract. (SeeBarber County Comm'rs v. Lake State Bank, 121 Kan. 223, 246 Pac. 524.) However, we are first concerned with the nature of the provision in thecontract. Is it a penalty calling for proof as to the damage sustained, or liquidated damages requiring no such proof? If the contract provision be a valid agreement for liquidated damages, how can the signers of the bond escape liability to the extent of $500, no matter what the provision in the bond be called? Even if the bond obligation were to be considered a "penalty" the fact would still remain that Megli had not only defaulted in his lease and purchase of the mill, but had also defaulted in his agreement to pay $500 as liquidated damages. Obviously no proof would be necessary that appellees had suffered a loss of $500 by his default in paying the $500. All of which is perhaps merely another way of saying that if the *Page 726 
provision in the contract is valid as "liquidated damages" the bond must also be so considered.
In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms "penalty" or "liquidated damages" in the instrument is of evidentiary value only. It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. (17 C. J. pp. 938-940; 15 Am. Jur. 678; Condon v.Kemper, 47 Kan. 126, 129, 27 Pac. 829.) The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty — the' first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damage resulting from default would not be easily and readily determinable. (17 C. J. pp. 936-943; 15 Am. Jur. pp. 681-685; Restatement, Contracts, § 339; Owen v. Christopher, 144 Kan. 765, 771, 772, 62 P. 2d 860;Kansas City v. Industrial Gas Co., 138 Kan. 755, 761-763, 28 P. 2d 968;City of Topeka v. Industrial Gas Co., 135 Kan. 646, 653,11 P. 2d 1034.)
Let us apply the above rule to the instant case. The contract called for payment of monthly rentals for more than three years — from September 15, 1937, to October 1, 1940. It called for the purchase, in installment payments, of the property at an agreed price of $10,000. It cannot be said that $500 was an unconscionable or unreasonable amount to be paid as damages in case of default on a contract of that magnitude. Accordingly, we find no persuasion here in the cases cited by appellants wherein the amounts stipulated by the parties as "liquidated damages" were all out of proportion to the damages to be reasonably anticipated, and were, therefore, treated by the court as "penalties" calling for proof of damage. In the second place, could it be said that damages resulting to the owners of the mill could have been easily determined with reasonable definiteness after default by the purchaser, and that therefore, the *Page 727 
agreement should not be upheld? Obviously not, in our opinion. The situation was one clearly permitting a reasonable advance agreement as to the amount of damages. We conclude that the trial court did not err in holding that the liability of the signers of the bond was based on liquidated damages, and that the amount of damages did not have to be established.
Our next question is whether the trial court erred in holding that the written contract pleaded in the petition superseded the "memorandum" agreement pleaded in the answer. There is substantial agreement as to the circumstances connected with the signing of these two documents. The executor and executrix, the appellees and Megli met together with an attorney on August 23, 1937, and after extended discussions came to an agreement for lease and purchase. They drew up and signed on that day what was designated a "memorandum." This memorandum agreement provided in general terms that Megli was to lease and purchase the mill, the estate was to make certain repairs, and Megli was to be permitted to make certain changes in machinery. The last paragraph of the "memorandum" was as follows:
"Ezra Megli agrees to lease said property for three years and agrees to purchase said property during said three years according to the terms of a lease which have been agreed upon and which are to be reduced to writing, and signed by all parties hereto subject only to the approval of said probate court."
It thus appears that the memorandum itself recited that the terms of the agreement to lease and purchase had been agreed upon and would be reduced to writing. It is agreed that lack of time prevented reducing the contract fully to writing on that day. After some few days the document designated "contract" was drawn up, antedated as of August 23, 1937, signed by all parties and approved in writing by the probate court. This contract, which was approximately five times as long as the "memorandum," recited the terms of the will relating to sale, set out in detail the terms of the lease and purchase and contained various other provisions including the provision for liquidated damages. After careful examination of the record we think that the trial court properly held that the "memorandum" signed the day the deal was made and not submitted to the probate court was subsequently merged into or superseded by the comprehensive "contract" subsequently executed, and approved by the probate court, after written consent of all the heirs. However, even if the provisions of the "memorandum" relating to certain *Page 728 
repairs be considered as supplementary and as a part of the whole agreement we would not be able to say, on the record before us, that the contrary holding of the trial court constituted reversible error. There was testimony that certain repairs were made by appellees as well as by Megli, and in any event, Megli took possession, paid rent and remained in possession for more than seventeen months, took no action to enforce further repairs by appellees and testified that when he abandoned the contract it was because he was making no profit out of the business.
Other contentions of appellants do not require extended attention. It is argued that if the obligation sued upon provided for liquidated damages, no action thereon could be maintained "until the entire contract had been breached," and that the action was commenced before the first down payment upon the purchase price became due. But the contract provided for liquidated damages in case of default "in fulfilling the contract or any part of it." Many months' rent was unpaid when the action was begun. Appellants, however, call attention to the jury's answer to question number 9,
"When Ezra Megli abandoned the property on March 31, 1939, did he then intend to pay any more rental, or to pay any part of the purchase price? A. We don't know."
What Megli's intention was at the time he "abandoned the property on March 31, 1939," as to making further payments is of little moment. The fact is he made no further payment, and in his answer specifically elected to terminate the contract and repudiated all liabilities thereunder.
Other contentions are sufficiently answered by what has already been said. We have examined the cases cited by the parties, but it would unduly extend this opinion to discuss them in detail. The cases amply support the views herein stated. We find no error, and the judgment is affirmed. *Page 794