## ELY v. WICKHAM.

## WICKHAM v. ELY.

### Nos. 3331, 3332.

Circuit Court of Appeals, Tenth Circuit.

Nov. 20, 1946.

Austin M. Cowan, of Wichita, Kan. (W. A. Kahrs and Robert H. Nelson, both of Wichita, Kan., on the brief), for appellant and cross-appellee.

George Siefkin, of Wichita, Kan. (Robert C. Foulston and John F. Eberhardt, both of Wichita, Kan., James E. Taylor, of Sharan Springs, Kan., and R. D. Armstrong, of Scott City, Kan., on the brief), for appellee and cross-appellant.

Before PHILLIPS and HUXMAN, Circuit Judges, and BROADDUS, District Judge.

BROADDUS District Judge.

These appeals present the conflicting contentions of the parties arising from the leasing of certain grain lands in Western Kansas, from the asserted breaches of the contracts of leasing, and the question of the adequacy and correctness of the damages allowed by the trial court. The prin-

cipal question concerns the legal effect of a term in the several leases, that if the lessee fails and neglects to farm the land and pay crop rent, he shall pay cash rent, at the option of the lessor, in the sum of $4 per acre. Is the provision a valid agreement for liquidated damages under the laws of Kansas? If valid, does it control the measure of recovery of the lessor for the lessee's breach?

The plaintiff in the trial court, James E. Ely, was the owner of the leased land. He executed three written contracts of leases upon as many areas to W. J. Wickham, the defendant below, early in 1944. The leases were known as the Darby Lease, Steele Lease, and Supplemental Lease, and they contained substantially the same covenants. For convenience, the parties will be referred to as the lessor and lessee.

The lessee covenanted not to permit volunteer wheat to grow on the land, to summer fallow and drill wheat in an agreed manner, to plant to barley and maize as specified, not to sell the maize for grazing purposes, to till the land in a workmanlike manner, and to pay a percentage of the wheat as crop rent. If the lessee should fail and neglect to farm the land and pay the crop rent, he would, at the option of the lessor, be obligated to pay $4 per acre. Upon a breach of any of the covenants the lease became void at the election of the lessor and he was entitled to re-enter.

The lessor filed suit August 15, 1944, against the lessee, electing therein to exercise the option for $4 per acre cash rent, and alleging the neglect of the lessee to farm the land properly and to pay the crop rent. By a supplemental complaint December 9, 1944, he sought cancellation of the leases because of further alleged breaches by the lessee. The trial court found each of the covenants set forth heretofore had been breached by the lessee. Upon these findings it is the contention of the lessor that he is not limited to the $4 cash rent but that he is entitled to actual damages calculated on the basis of what the land would have produced in 1944 and 1945 had the leases been fully performed. We may concede that, following the breach by the lessee, the lessor might cancel or terminate the leases as to future performance by himself, and still maintain an action for damages already accrued. The question is not the right to, but the measure of damages.

■ We may put at rest any doubt implied in the lessor's specification of error, that his exercise of the option to take the cash rental does not commit him to that claim. Not only does the bill of complaint declare the exercise of it, but the evidence shows that about the time of filing the suit, the lessor rejected a check offered him for the specified contract percentage of the maize crop. It was not until a year later—after an excellent wheat crop in Western Kansas—that the lessor came forth with his insistence on actual damages. Having theretofore chosen one of two inconsistent remedies he may not thereafter pursue the other in search of greater gain.[1]

■ Furthermore, the agreement was not that the lessor within his will might have either crop rent or cash rent, but that he should have the right to elect to recover cash rent after the failure to pay the crop rent or to perform other covenants of the leases. There was no basis for an election unless there was a breach. After breach and upon election to recover cash rent by commencement of this action, the measure of recovery—that is, cash rent, became fixed and final.[2]

■ The trial court found the provision to be one for moderate compensation and not a penalty. The finding is in harmony with the weight of the evidence and the Kansas rule. Where the damages are uncertain in nature or amount, or are difficult of ascertainment, and the amount stipulated does not manifestly exceed the injury which might be suffered, agreements for the payment of liquidated damages will be given full effect.[3] The contracts were

[1] Fee & Liddon Co. v. Porter, 144 Kan. 108, 58 P.2d 55; Taylor v. Robertson Petroleum Co., 156 Kan. 822, 137 P.2d 150. See also Davidson v. McKown, 157 Kan. 217, 139 P.2d 421; Curtis v. Hanna, 146 Kan. 919, 73 P.2d 1063.

[2] Christy v. Gaylord, 158 Kan. 753, 150 P.2d 164; Taylor v. Robertson Petroleum Co., supra.

[3] Consolidated Flour Mills Co. v. File Bros. Wholesale Co., 10 Cir., 110 F.2d 926, 930; Kuter v. State Bank of Hol-

fully understood and freely entered into by the parties. From their nature the damages of a breach would have been difficult of ascertainment. Considered from the viewpoint of the parties at the time of entering into the several leases, the agreed cash rent was a fair pre-estimate of the damages the lessor might sustain from a breach. Whether the actual damages turned out to be greater [4] or turned out to be less [5] was not determinative of the reasonableness of the stipulation, and the stipulated or liquidated figure stands. Principles of law relating to the measure of damages when agreements are wanting are inapplicable [6] and the injured party may not disregard the provision as to liquidated damages and seek a recovery measured by the actual damage suffered. [7]

■ It is not positively stated whether the $4 per acre was to be payment for a yearly rental or for the term of the lease. Since the amount named was to be the measure of payment in lieu of crop rent, which was for all practical purposes on a yearly basis, it seems reasonable that the stipulated per acre figure was to be upon the same basis. The trial court so found and we agree.

■ Finally, the lessor insists that the Darby Lease was cancelled by the parties for only one-half of the acreage of the lease, and that it was not cancelled as to all of the leased area by agreement of the parties as found by the trial court. A portion of the acreage of the Darby Lease was also covered by the Steele Lease. A series of conversations and agreements concerning the land covered by the Darby Lease and not also by the Steele Lease took place in the late spring and summer of 1944 about what portion of the land the lessee was going to be able to handle, what the lessor had leased or was going to lease to third parties, and what he was going to farm himself. The trial court excluded all of the Darby Lease not included in the Steele Lease from the estimate of the lessor's damages. Also excluded from the estimate were certain waste lands and a plot mentioned hereafter on which the lessor plowed up volunteer wheat. The evidence upon these exclusions was conflicting, and as to the Darby Lease was not wholly satisfactory. Since we cannot say from a review of the record that these findings were clearly erroneous, they will not be disturbed. [8]

■ There remains the claim of the lessee for the volunteer wheat plowed up by the lessor. The wheat was there in violation of the lessee's covenant not to permit volunteer wheat upon the land, and the lessee may not profit thereby. The lessor's unauthorized entry upon this plot and his plowing under of the volunteer wheat thereon were without excuse. Both parties being in the wrong, neither may complain. They will be left as they were found by the trial court.

The judgment of the trial court is affirmed.

ton, 96 Kan. 485, 152 P. 662; Erickson v. O'Leary, 127 Kan. 12, 273 P. 414; Illinois Trust & Savings Bank v. City of Burlington, 79 Kan. 797, 101 P. 649, 652; Glascock v. Stamey, 130 Kan. 838, 288 P. 579; Henshaw v. Smith, 102 Kan. 599, 171 P. 616, 617; St. Louis & S. F. R. Co. v. Gaba, 78 Kan. 432, 97 P. 435, 437; and see Kansas City v. Industrial Gas Co., 138 Kan. 755, 28 P.2d 968.

[4] See Owen v. Christopher, 144 Kan. 765, 62 P.2d 860.

[5] See Kansas City v. Industrial Gas Co., supra; St. Louis & S. F. R. Co. v. Gaba, supra.

[6] Glascock v. Stamey, supra; Henshaw v. Smith, supra.

[7] Chicago Life Ins. Co. v. Tierman, 8 Cir., 263 F. 325, 333.

[8] British American Assur. Co. of Toronto, Canada, v. Bowen, 10 Cir., 134 F.2d 256.