**NATIONAL COOPERATIVE REFINERY ASSOCIATION, Appellant,**

v.

**NORTHERN ORDNANCE, Inc.,**
Appellee.

No. 5390.

United States Court of Appeals
Tenth Circuit.

Oct. 24, 1956.

Rehearing Denied Nov. 27, 1956.

Emmet A. Blaes, Wichita, Kan. (Cecil E. Merkel, Jr., Wichita, Kan., on the brief), for appellant.

James E. Dorsey, Minneapolis, Minn., and Verne M. Laing, Wichita, Kan. (Lester L. Morris, Ferd E. Evans, Jr., Ralph R. Brock, Wichita, Kan., and J. Edward Taylor, Jr., Wichita, Kan., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Northern Ordnance, Inc., herein called Northern, against the National Cooperative Refinery Association, herein called the Association, to recover $55,000 liquidated damages for breach of contract.

The litigation arose out of the sale by the Association to Northern of ten producing oil and gas leases in Barton, Rice and Finney Counties in Kansas, for a total consideration of $2,000,000, of which $1,350,000 was to be paid out of production and the balance in cash. The contract was dated April 28, 1948. One of the leases was known as the Maune Lease. The title to this lease was clouded by virtue of a suit pending in the state courts involving the validity of a similar lease. With respect to the Maune Lease the contract contained this provision:

"VI. * * * In the case of the Maune Lease described in Exhibit 'A', it is understood between the parties hereto that there is a substantial title defect which the Seller may not be able to remove by the closing date. In event such defect has not been cured within one year from the date of this contract, the Seller shall pay to the Buyer the sum of $55,000, and thereupon the Seller shall be relieved from any further obligation with respect to such defect."

The title was not cleared within the year, although it was thereafter perfected and the Maune Lease was conveyed to Northern under a clear title. This suit was instituted August 12, 1950, to recover the $55,000 as liquidated damages. This is an appeal from a judgment in Northern's favor for the $55,-000.

The parties are not in agreement with respect to what was required by the Association to be done to clear the defect in the Maune Lease. As stated, there was pending a suit involving what is known as the Worcester Lease. The Association contends that this was the litigation which cast a cloud upon the Maune Lease and which the parties had in mind and that the agreement and understanding was that a favorable decision in this case would likewise clear the Maune Lease. A favorable decision

from the Supreme Court in the Worcester case, Sinclair Prairie Oil Co. v. Worcester, 167 Kan. 194, 205 P.2d 942, came down nine days after the expiration of the year fixed by the contract. Northern denies that this was the agreement or understanding and contends that a favorable consideration in the Worcester case would not clear the title to the Maune Lease.

There is much to support the above contention by the Association. The two leases were of the same type. The alleged defect in each arose from a provision for pooling all mineral interest under all such leases and the pooling agreement was identical in the two leases. The Worcester Lease litigation was in the courts at the time of the execution of the contract. It was the only pending challenge to the legality of the pooling agreement. No question had been raised by any one with respect to the validity of the Maune Lease. It is a little difficult to conceive that the Association would agree to remove within a year a cloud on the Maune Lease or pay $55,000 when no adverse interest was being asserted or might ever be asserted thereunder. But since the contract refers only to the Maune Lease, the case will be disposed of on the ground that a favorable decision in the Worcester case was not construed by the parties as constituting compliance with this requirement of the contract. This opinion will, therefore, be bottomed on the premise that the parties contracted for the removal of the cloud on the title to the Maune Lease other than through the favorable conclusion of the litigation in the Worcester Lease.

A number of assignments of error are urged for reversal but we think one question is dispositive of the case and that is, did the agreement to pay $55,000 if the cloud on the Maune Lease was not removed within a year from the date of the contract constitute a penalty or was it an agreement for the payment of liquidated damages? There was a breach of the agreement whether measured by the Worcester litigation or the subsequently instituted litigation in the Maune case. The Worcester case was finally favorably determined nine days after the expiration of the year and the Maune litigation, which was subsequently instituted, was favorably concluded approximately one and one-half years after the expiration of the year.

Little need be said about what constitutes a penalty or liquidated damages. The applicable principles of law are clear and without dispute. The law permits parties to stipulate what damages shall be paid for a breach of contract where actual damages can be expected to result from a breach and where the amount of such damages are difficult of exact ascertainment. One other requirement is that the stipulated amount bear reasonable relationship to the damages which may be expected to follow from the breach.[1] Absent these elements, stipulated sums will be construed to be penalties.[2] Whether the parties call the stipulated sums liquidated damages is worthy of some consideration, it is not however controlling, and some stipulations of liquidated damages will be decreed to be penalties, notwithstanding the name given by the parties thereto.

With these principles of law in mind, let us look to the provisions of the contract and the circumstances of the case. It is to be noted that Paragraph VI does not refer to the amount of $55,000 as either damages liquidated or otherwise. It merely states that the Association shall pay $55,000. No doubt the parties

1. Restatement of the Law, Contracts, § 339; 15 Am.Jur., Damages, §§ 241–244; Condon v. Kemper, 1891, 47 Kan. 126, 27 P. 829, 13 L.R.A. 671; Gregory v. Nelson, 1938, 147 Kan. 682, 78 P.2d 889; Beck v. Megli, 1941, 153 Kan. 721, 114 P. 2d 305, 135 A.L.R. 1124; Sun Printing & Publishing Co. v. Moore, 1901, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366; Consolidated Flour Mills Co. v. File Bros. Wholesale Co., 10 Cir., 1940, 110 F.2d 926; Ely v. Wickham, 10 Cir., 1946, 158 F.2d 233.

2. Heatwole v. Gorrell, 1886, 35 Kan. 692, 12 P. 135; Condon v. Kemper, supra.

had in mind that this sum be paid as damages. What damages then did the parties have in mind? Obviously not damages arising or incurred by Northern during the year because the Association had that year to perfect the title without liability of any kind.

Did they have in mind damages resulting from the loss of the Maune Lease? In other words, did they place a value of $55,000 on the Maune Lease and provide that such sum should be paid as damages for the loss of the lease because of the Association's failure to perfect the title to the lease within the year? The parties stipulated that the Maune Lease with approximately $27,000 worth of equipment thereon was worth the round sum of $55,000, and in its brief appellee states, "The situation as it existed at that time, in light of the first Worcester case, was gloomy at best. All indications were that the Maune Lease was probably fatally defective." This could be construed to mean that if the Maune Lease were lost because it was fatally defective Northern should recover $55,000, the fixed value of the lease. Surely the parties did not intend that if the Association continued its efforts to perfect the title after the expiration of the year, as it did perfect the title, and tender it to Northern, that Northern could have its cake and yet eat it, that is take the lease valued at $55,000 now without any defect in the title, and also exact a pound of flesh, collect the additional sum of $55,000. To so hold would make the agreement to pay $55,000 a clear penalty. There is much to support the argument that the parties had in mind that if the Maune Lease were lost that its value, agreed to be $55,000, should be returned to the purchaser and that the time element of one year was to provide a method whereby the purchaser would not be required to wait indefinitely for a good title. It is unreasonable to assume that the parties intended that if the title were perfected after more than one year from the date of the contract that Northern could accept the lease undiminished in value and also exact payment. So construed the agreement to pay $55,000 would constitute a penalty.

But, assuming that such a construction is not warranted and that the payment of $55,000 was considered as damages because of the failure of the Association to clear the title within the year, we feel the provision still constitutes a penalty and not liquidated damages. The contract provides for the payment of $55,000, let us assume, as damages if the title is not cleared within a year. That means if the Association by the end of the year has not favorably concluded litigation or taken other steps necessary to perfect the title Northern was entitled to $55,000. The conclusion is inescapable that the language of the contract means that the damages which the parties had in mind were the damages which would follow the failure of the Association to perfect the title within the year, notwithstanding that it perfected the title thereafter and tendered a perfect title which Northern would accept; in other words, the damages considered were limited to any incurred after the expiration of the year. It could not include any loss which Northern might suffer during the year. That is so because if on the last day of the year the Association had tendered a perfect title it was not liable for any loss suffered prior thereto, such as Northern's inability to further develop the lease during the year or for drainage during the year or from any other causes.

So considered the question narrows down to this, was there reason to believe that substantial damage would be incurred after the expiration of the year, notwithstanding that the title was perfected, tendered to Northern and accepted by it? Assuming that the answer is in the affirmative, there is no evidence in the record upon which a finding of such damages could be predicated. True, there is discussion in the record that Northern was delayed in further development. Also, there is discussion

in general terms of drainage and other horizons to be explored. But, assuming these elements are present, how much damage, if any, occurred because of these facts during the year, and how much, if any occurred after the expiration of the year, prior to the time the lease was accepted by Northern? Northern did not undertake to prove such damages and there is no basis for assuming that they actually occurred under the state of the record or, if they did, whether they were substantial and bore a reasonable relationship to the sum of $55,000.

The value of the lease together with $27,000 worth of equipment was fixed at $55,000 and there is absolutely no showing in the record that it was worth less than that sum at the time it was accepted by Northern. In this condition of the record and without any showing that actual damages occurred, to say nothing of the amount thereof, the conclusion is inescapable that the $55,000 bore no reasonable relationship whatever to damages which might be suffered by Northern after the expiration of the year because the title had not been perfected by that time, and that under any theory the sum of $55,000 therefore clearly is a penalty and not liquidated damages which Northern was not entitled to recover.

The judgment is reversed and the cause is remanded with directions to proceed in conformity with the views expressed herein.

MURRAH, Circuit Judge (dissenting).

Of course the law does not favor penalties or forfeitures, and equity will unhesitatingly relieve against them when they are sought to be exacted for the breach of a contract. One is entitled only to just compensation for the breach. But, without derogating from this fundamental concept, the courts also encourage parties to stipulate with respect to the amount of damages to be suffered in the event of breach, and where the parties have so agreed, the court will not hesitate to enforce it, unless it is shown to be wholly disproportionate to the damages suffered. See Consolidated Flour Mills Co. v. File Bros. Wholesale Co., 10 Cir., 110 F.2d 926; Ely v. Wickham, 10 Cir., 158 F.2d 233; Owen v. Christopher, 144 Kan. 765, 62 P.2d 860; Kansas City v. Industrial Gas Co., 138 Kan. 755, 28 P.2d 968; Beck v. Megli, 153 Kan. 721, 114 P.2d 305, 135 A.L.R. 1124.

In the latter case, the Kansas Court, considering the question whether the contractual agreements were to be treated as penalties or liquidated damages, said two considerations were decisive, namely, "first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damage resulting from default would not be easily and readily determinable." Beck v. Megli, supra, 114 P.2d at page 308.

Looking at this whole transaction, we have two oil companies involved in a two-million dollar transaction; the title to ten oil and gas leases are at stake. And, there is an admitted substantial defect in the title to one. The value of that lease is approximately $55,000; the parties agree in effect that if the title is not cured within one year, the sum of $55,000 will be deducted from the purchase price. While the parties undoubtedly had in mind the Worcester litigation then pending in the Supreme Court, it is certain that the Worcester litigation did not cure the defect. Indeed, the defect was not cured until after the Supreme Court settled the specific question presented. The very nature of the litigation leaves no doubt of the uncertainty of the validity of the title, for each case rested upon its own peculiar facts. In the first Worcester case, the Supreme Court held the title defective; the title was ultimately sustained on an amended petition, which alleged peculiar facts. In the last Worcester case,

two judges concurred specially, and three judges dissented in the Maune case, which ultimately established the validity of the title in this particular case.

From the evidence before it and in this setting, the trial court specifically found that the title defect, about which the parties contracted, was not cured until about December 16, 1950, upon the conclusion of the Maune litigation, and four months after this suit was filed; that in view of the substantial title defect existing at the time of the contract, and in view of the litigation involving this title, the appellee was unable for over two and one-half years after acquiring the Maune Lease to further develop or protect it from drainage, or to offer a good title to a prospective purchaser or mortgagee; that in view of all the circumstances, it would be most difficult and practically impossible for the appellee to prove the actual damage which it suffered by reason of the substantial defect in the lease; and that the amount of damages stipulated was, in view of all the circumstances, not unreasonable or disproportionate to the actual damages sustained. The court concluded therefore, that it was not a penalty and entered judgment for the stipulated amount. I cannot imagine more appropriate circumstances for the stipulation of damages. Certainly I cannot believe that the trial court's findings are clearly erroneous and I would affirm the judgment.