No. 30,596.

THE CITY OF TOPEKA, *Appellee*, v. (The Industrial Gas Company)
THE NATIONAL SURETY COMPANY, *Appellant*.

(11 P. 2d 1034.)

Opinion filed June 4, 1932.

*J. D. M. Hamilton,* of Topeka, *Henry L. Jost, R. B. Caldwell* and *J. M. McCune,* all of Kansas City, Mo., for the appellant.

*W. E. Atchison,* city attorney, and *Henry Dangerfield,* assistant city attorney, for the appellee; *John E. Addington* and *Howard A. Jones,* both of Topeka, of counsel.

*Alton H. Skinner,* of Kansas City, as *amicus curiæ.*

The opinion of the court was delivered by

SMITH, J.: This was an action to collect the amount of a bond given to guarantee compliance with the terms of a franchise ordinance. Judgment was for plaintiff. Defendant appeals.

The city of Topeka passed an ordinance giving a franchise to the Industrial Gas Company to furnish gas to industrial users in the city. The part of the ordinance which it is necessary for us to consider is section 5. It is as follows:

"SEC. 5. That within thirty (30) days after acceptance of this ordinance by the grantee and as one of the considerations for granting the franchise herein contained, grantee agrees that it will cause to be begun construction of a pipe line of at least twenty (20) inches in diameter to transport natural gas from the Amarillo, Tex., gas fields to Kansas City, Mo., and that within one hundred fifty (150) days after the acceptance of this ordinance by the grantee it will cause to be begun construction of a pipe line of at least twelve (12) inches in diameter to connect said principal pipe line hereinbefore mentioned with grantee's distribution system in the city of Topeka, and also within said time cause to be begun a system of pipe lines for the distribution of said natural gas to industrial users within said city, and that said principal pipe line, said pipe line connecting the principal pipe line with the said distribution system, and said distribution system (in so far as may be necessary to meet the demands for service, so that grantee can and will deliver such natural gas to industrial consumers of the city of Topeka at a pressure of not less than five [5] pounds per square inch) will be completed within one year from the date of such commencement of construction of said principal pipe line, subject to an extension of said time equaling delays in such construction caused by the acts of God, the elements, labor troubles, accidents and any and all other causes not reasonably within the control of the grantee; provided, that on or before the acceptance of this franchise by the grantee it agrees to file and deposit with the city clerk of the city of Topeka a good and sufficient surety bond in the sum of $12,500, executed by a company authorized to transact business in the state of Kansas, guaranteeing the construction of the twelve-inch gas line . . . to the gates of the city of Topeka within the time provided in this section. Because of the difficulty of ascertaining and determining the actual damages which shall be sustained by the city in the event of failure of the grantee to cause said twelve-inch line to be constructed, said sum of $12,500

is hereby agreed upon as liquidated damages which would in such event be sustained by said city."

Pursuant to the section quoted and on the same day that the ordinance was accepted the company executed the following bond:

"Whereas, by the terms of ordinance number 5801, passed by the board of commissioners of Topeka, Kan., on January 10, 1928, granting to the Industrial Gas Company, a corporation organized under the laws of the state of Kansas, its successors and assigns, a natural gas franchise in said ordinance more fully described, it is provided that the grantee therein shall within thirty (30) days after the acceptance of said ordinance by the grantee cause to be begun construction of a pipe line of at least twenty (20) inches in diameter to transport natural gas from the Amarillo, Tex., gas fields to Kansas City, Mo., and that within one hundred and fifty (150) days after the acceptance of said ordinance by the grantee it will cause to be begun construction of a pipe line of at least twelve (12) inches in diameter to connect said principal pipe line from said Amarillo, Tex., gas fields to Kansas City, Mo., with grantee's distribution system in city of Topeka, Kan., and also within said time cause to be begun a system of pipe lines for the distribution of natural gas to industrial users within said city of Topeka, and that said principal pipe line, said pipe line connecting the said principal pipe line with the said distribution system and said distribution system (in so far as may be necessary to meet the demands for service so that grantee can and will deliver such natural gas to industrial consumers of the city of Topeka at a pressure of not less than five [5] pounds per square inch) will be completed within one year from the date of such commencement of construction of said principal pipe line, subject to an extension of said time equaling delays in such construction caused by acts of God, the elements, labor troubles, accidents and any and all other causes not reasonably within the control of the grantee; and

"Whereas, said The Industrial Gas Company has concurrently with the filing of this bond with the city clerk of said Topeka, Kan., filed with said city clerk of said Topeka, Kan., its acceptance in writing of the provisions, terms, obligations and conditions of said ordinance:

"Now, therefore, if the construction of the twelve (12) inch gas line above referred to from the main twenty (20) inch line above described to the gates of the city of Topeka, shall be begun and be completed within the time provided in said ordinance for the beginning and completion of said twelve (12) inch pipe line, then the obligation of this bond shall be void; otherwise it shall remain in full force and effect."

It will be seen that the ordinance speaks of three projects; the line from Amarillo to Kansas City, Mo., the connecting line between the line from Amarillo to Kansas City and Topeka and the distribution system in the city of Topeka. The ordinance provided that a bond should be given guaranteeing the construction of the line between Kansas City and Topeka. This ordinance was submitted to the voters of the city at a special election and adopted by

them. This bond was given and is the one sued on. It will be seen that the bond speaks of the provision of the ordinance with reference to three projects, but binds the bonding company only to pay in case the connecting line is not built. As it turned out, none of the three projects ever was completed.

The petition alleged the facts about as detailed here, and prayed for judgment for the amount of the bond.

The answer of defendant admitted the passage of the ordinance and the execution of the bond. It further alleged that the issuance of a certificate of necessity and convenience by the public service commission of the state of Missouri, permitting and authorizing the construction of a distributing system in the city of Kansas City, Mo., was a condition precedent to the performance of the obligation guaranteed as to performance by the bond, and failure on the part of the gas company to obtain such certificate made performance of said obligation impossible; the attempt on the part of the gas company to secure this certificate and its failure so to do; that the necessity for this certificate was known to the members of the city commission at the time the ordinance was passed and the bond executed, and the fact that the obtaining of this certificate might de-. feat the carrying out of the building of the connecting line was known and guarded against in the bond sued on by the following clause providing for an extention of time:

"Subject to an extension of said time equaling delays in such construction caused by the acts of God, the elements, labor troubles, accidents and any and all other causes not reasonably within the control of the grantee."

The allegation in the answer was that the inability to obtain the certificate was the cause of the failure to build the connecting line. The answer then alleged that the only obligation guaranteed to performance by the bond is the obligation, if any, of the gas company to construct a twelve-inch connecting pipe line, and this obligation was and is so indefinite, uncertain and impossible of performance that plaintiff could not allege or prove any damages for the breach thereof; that the city of Topeka had not sustained any damages on account of the alleged breach of the bond; that there was no provision in the bond for liquidated damages; that no actual damages had been alleged or proved. The answer further alleged that the ordinance actually purported to grant a franchise to defendant on a condition to be performed entirely outside the territorial limits of the city; that the bond sued on was to secure the performance of

this condition and was one which the city had no authority to demand.

The reply alleged that the bonding company had entered into the bond for compensation; that it had secured itself against loss, and knew at the time of entering into the bond of the provisions of the bond and of the ordinance. Trial was to the court. Without making any findings of fact or conclusions there was a general finding and judgment for the plaintiff. From that judgment this appeal is taken.

The errors urged here by appellant follow the allegations of the answer. The first ground upon which reversal is asked is that with reference to the certificate authorizing and permitting the construction of a distributing system in Kansas City, Mo. Appellants argue that since the city commissioners knew of the necessity of this certificate at the time the bond was accepted, that the obtaining of this certificate was a condition precedent to the binding effect of the bond. It is sought to bring the case under the rule that performance of a contract will be excused without liability if it can be said that the parties contemplated that a certain state of things must exist in order for performance to be had and if it can be shown that performance was impossible through no fault of the promisor because the contemplated state of things did not exist. We have seen that appellant was a surety for hire. It comes under the rule announced in *School District v. McCurley*, 92 Kan. 53, 55, 142 Pac. 1077. There this court said:

"A marked distinction is recognized by many of the courts as to the application of the rule as between contracts of an accommodation surety and the contract of a paid surety. As to the contracts of an accommodation surety, made dependent upon a condition precedent, the courts all agree that the strict letter of the contract will be enforced; but as to the contract of a paid surety, many of the courts, especially in the later decisions, inquire whether the surety was injured by the default of the condition, and if so, they enforce it only to the extent of the injury. In *Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544, it was held that the rule that sureties are favorites of the law does not apply to corporations engaged in the business of furnishing bonds for profit."

See, also, *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563.

If it be said that the city commissioners of Topeka knew of the necessity for the certificate as to Kansas City it can hardly be said that the surety company did not have the same knowledge at the time it executed the bond. The three different projects were written into the ordinance and the bond, and one could hardly read them without understanding that they were all dependent on each other. It

is to be remarked that no reference to the necessity for such a certificate is in the bond. There is no reason why the line from the fields of Amarillo to Kansas City was not built, even though the certificate was not obtained, except that without the right to distribute gas in Kansas City such a line would not be profitable. None of the cases cited by counsel for appellant in its able and exhaustive brief states that such a reason is any excuse for not performing a contract. It is fundamental that performance of a contract will not be excused merely because its performance turns out to be hard and improvident or less profitable or unexpectedly burdensome. (13 C. J. 637.)

· Appellant points out the following clause in the bond:

"Subject to an extension of said time equaling delays in such construction caused by acts of God, the elements, labor troubles, accidents and any and all other causes not reasonably within the control of the grantee."

It argues that the failure to obtain the certificate brings the case within that clause. That clause was not intended to cover the inability of the gas company to construct these lines and systems and operate them profitably. There is nothing pointed out in this record which prevented the company from the actual construction work of all three of the lines spoken of in the bond. No reason is pleaded why they were not all built except that they would not have been profitable without the Kansas City distributing system. The rule is that even a clause such as that relied on in the bond and ordinance in question will not excuse performance unless performance of the contract is impossible from the very nature of things. (13 C. J. 638.) It will be noted that there are several things set out in the clause in question; that is, "labor troubles," "accidents," and any and all other causes not reasonably within the control of the grantee. The rule is that when several specific contingencies are named in a contract that will excuse nonperformance the contingencies named are the only ones that will excuse. (13 C. J. 638.) This question was dealt with in the case of *Drug Supply Co. v. Board of Administration,* 106 Kan. 256, 187 Pac. 701. In that case the promisor endeavored to escape performance of a contract on account of having gone into the hands of a receiver. The court said:

"Generally, when one contracts to do a thing possible in itself he will be liable for breach of such contract, notwithstanding the occurrence of a contingency which, although not foreseen by him or within his control, but which might have been provided against, has put it out of his power to perform." (Syl. ¶ 2.)

In the present case it can hardly be said that it was beyond the power of the gas company to perform. It is only unprofitable. (See, also, *Winfrey v. Automobile Co.*, 113 Kan. 343, 214 Pac. 781.)

Appellant points out that the bond does not contain any provision requiring the payment of any sum as liquidated damages. It argues that there can be no recovery on the bond since it is one requiring the payment of a penalty, and no actual damages were pleaded in the petition of plaintiff or proven at the trial. It will be recalled the ordinance provided that—

"Because of the difficulty of ascertaining and determining the actual damages which shall be sustained by the city in the event of failure of the grantee to cause said twelve-inch line to be constructed, said sum of $12,500 is hereby agreed upon as liquidated damages which would in such event be sustained by said city."

The suit was filed and the action tried on the theory of appellee that the ordinance and bond should be construed together. If this be done, then the bond is clearly one to pay liquidated damages. The ordinance was accepted and the bond given simultaneously by the gas company. The bond refers to the city ordinance, and the things the company bound itself to do with reference to building the lines by its terms. In *Barber County Comm'rs v. Lake State Bank*, 121 Kan. 223, 246 Pac. 524, a bond had been given to secure county deposits. The bond referred to the contract between the county commissioners and the bank. On a suit to collect the bond the court held:

"A bond given by a bank to secure deposits of county funds referred to the contract made between the bank and the county commissioners and recited that the bond was given in consideration of that contract. *Held*, that the contract was a part of the terms of the bond the same as if recited in the bond." (Syl. ¶ 1.)

The general rule is—

"That where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations, or restrictions becomes a part of the bond, and the two should be read together and construed as a whole." (9 C. J. 36.)

See, also, *Despres v. Folz*, 134 Ill. App. 111.

The case at bar is one where the ordinance and bond sued on should be construed together. As has been seen, the bond contained a reference to the ordinance. Appellant had notice that the bond it

was asked to execute was to secure performance of the terms of the ordinance. The provision of the ordinance which appellant argues was not written into the bond is one for liquidated damages. If there ever was a case where the bond should be for liquidated damages rather than for a penalty this is it. Appellant complains that there was no allegation or proof of actual damages. The reason is that there is no rule by which the damages should be measured. Every citizen of the city knows that they were damaged by the failure of the appellant to complete the contract. To hold that the bond in this case was for a penalty and that only actual damages can be collected under it would result in the bond being of no benefit whatever to the city and would nullify the provision in the ordinance with reference to a bond.

The general rule is laid down in 17 C. J. as follows:

"The parties to a contract may, where the damages consequent upon a breach are of an uncertain nature, estimate them in advance of a breach and agree upon their measure, and such an agreement when entered into in good faith will be enforced. It is not essential to the validity of such a provision that the damages which may accrue shall be liquidated as to both parties to the contract. Nor need the liquidated damage clause be reciprocal." (p. 931.)

In *Railroad Co. v. Gaba*, 78 Kan. 432, 97 Pac. 435, this court held:

"The extent of a possible future loss to be paid in the event of a breach of contract may be agreed upon in advance, where there is difficulty in determining the extent of the loss and the resulting damages are uncertain. In such a case the amount so fixed, if reasonable, will be allowed when the default occurs." (Syl. ¶ 2.)

Also—

"The use of the words 'forfeiture,' 'penalty' and 'liquidated damages' in such contracts is not controlling, although due weight should be given to such expressions, in connection with other parts of the argument, the subject matter, and other facts and circumstances." (Syl. ¶ 4.)

See, also, *Bank v. Burlington*, 79 Kan. 797. In *Scott's Administrators v. City of Mayfield*, 153 Ky. 278, it was held:

"Where a street railway franchise requires the railway to be commenced and constructed within a given period of time, and the purchasers execute to the municipality a bond conditioned that the purchasers will comply with the provisions of the franchise ordinance in that respect, the sum fixed in the bond will be regarded as liquidated damages, and may, on a breach of the bond, be recovered without proof of actual damage, unless the sum so named is unreasonable or oppressive."

See *Whiting v. Village of New Baltimore*, 127 Mich. 66; *Township*

*of Springwells v. Detroit, etc., Ry.*, 140 Mich. 277; also, *City of Marshall v. Adkins*, 60 Tex. Civ. App. 336.

Appellant argues further that the ordinance as passed was intended to fix as a condition to the granting of a franchise an act to be performed entirely beyond the territorial limits of the city and was, therefore, void and the bond given to secure the performing of this condition cannot be enforced. It cannot be said that the work was to be performed wholly beyond the territorial limits of the city. The line was to be connected with the distribution system in the city. As a practical matter the connection would be made at what is known as the city gates; that is, the boundary of the city, but there is nothing in the ordinance which would prevent the connection being made well within the limits of the city. The case relied on by appellant is *City of Arcata v. Green*, 156 Cal. 759. In that case the court held:

"When a municipal corporation of the sixth class grants the right to construct an electric railroad through such city on the condition that the grantees should, within certain periods, commence and complete the construction of their road between another place and such city and through such city, the condition is not severable. The construction to be undertaken is a single and complete thing, and the grant is an attempt by the municipality to grant a right upon condition that the entire contemplated road be constructed. Such an attempt of the municipality to exercise extraterritorial power vitiated the condition, and avoided, for want of consideration, an undertaking purporting to have been given by the grantees in consideration thereof."

The case was decided on the theory that the city was bargaining for a road between itself and another city and was seeking to regulate matters beyond its territorial limits. This decision is discussed in 4 McQuillin on Municipal Corporations, 2d ed., § 1773, as follows:

"If the condition is in fact a regulation of matters outside of the municipality, the decision appears sound; but if it is merely the imposition of a condition that a public utility company shall not be entitled to certain rights within the corporate boundaries unless it not only complies with certain conditions as to its property within such limits, but also complies with the same conditions as to its property outside of the municipality, it is clear the action is not beyond municipal jurisdiction. Moreover, such a provision is a proper one to protect the interests of the local corporation and in many cases would be of little benefit if restricted to the building of the road within the municipality."

In the case at bar the city simply took precautionary steps to see that it would not find itself in a position where a company owned a franchise to furnish gas within the city with no gas to furnish. To

hold that the city could not impose a condition such as that provided for here would leave it at the mercy of men who seek franchises merely for promotion purposes.

This case comes within the rule laid down by McQuillin as one where the city has jurisdiction.

We conclude that there was no error in the judgment of the trial court, and it is affirmed.