No. 46,176

White Lakes Shopping Center, Inc., a Kansas Corporation, *Appellant*, v. Jefferson Standard Life Insurance Company, a Corporation, *Appellee.*

(490 P. 2d 609)

Opinion filed November 6, 1971.

*Floyd E. Gehrt*, of Topeka, argued the cause, and *Robert L. Roberts*, of Topeka, was with him on the brief for the appellant.

*Arthur E. Palmer*, of Topeka, argued the cause, and *Ernest J. Rice*, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: White Lakes Shopping Center, Inc. (appellant) brought this action in the district court to recover $77,000 which

it had paid Jefferson Standard Life Insurance Company (appellee) in connection with a $3,850,000 written loan commitment agreement. The claim was denied in the trial court and this appeal followed. A brief recitation of background facts is necessary.

White Lakes desired to build a modern shopping center in Topeka, Kansas. White Lakes approached a mortgage brokerage company, Kansas City Mortgage Company, to locate financing. The brokerage company found that Jefferson Standard was interested in making a loan for construction of the shopping center. White Lakes then submitted a loan application to Jefferson Standard asking for $4,000,000 in "end financing." (We are advised the term "end financing" denotes the long term mortgage loan to be given on completion of construction as distinguished from interim or temporary financing used to make payments as construction progresses.) After a personal investigation of the project planned, Jefferson Standard prepared and submitted to White Lakes the first written loan commitment for $3,500,000 on September 5, 1963. The commitment agreement obligated Jefferson Standard to make the $3,500,000 loan to White Lakes on completion of the project on or before May 31, 1965.

The loan for "end financing" guaranteed by the commitment agreement was to be secured by a first mortgage on the completed shopping center property. The mortgage was to extend for a term of 22 years. Interest under the mortgage was to be paid at a rate of 5.75 percent per annum. The commitment agreement contained a provision for an advance payment by White Lakes to Jefferson Standard which payment is the subject of the present action. The payment was made and the commitment agreement was accepted and signed by White Lakes. At the request of White Lakes the amount of the commitment was increased on two occasions. Separate commitment agreements covering the increases were executed. These contained a similar binder provision requiring additional advance payments.

A total of $77,000 was paid to Jefferson Standard under the provision common to all three commitment agreements. This provision for advance payment reads:

". . . Upon the loan being closed this $77,000 deposit is to be refunded promptly; but if the loan is not closed in accordance with the terms of this alternate commitment, the $77,000 deposit is to be retained permanently by the Jefferson Standard Life Insurance Company as liquidated damages. . . ."

In passing, we note the trial court held that the loan commitment agreement was complete and unambiguous. We agree. Appellant fails to point to any specific provisions to the contrary.

The final commitment agreement for $3,850,000 was dated June 29, 1964, and accepted by White Lakes on July 9, 1964. Jefferson Standard refused further requests to increase the amount of the commitment. Shortly thereafter White Lakes, through the mortgage brokerage company, located another life insurance company which eventually furnished "end financing" of $4,250,000 for the shopping center. White Lakes now sues to recover the $77,000 paid to Jefferson Standard under the loan commitment agreement.

White Lakes filed the action making two claims in separate counts of the petition. The claim in count one is based upon a contention that the provision for payment of the $77,000 was a penalty provision rather than a provision for liquidated damages and that the amount paid should be returned to them. The claim in count two is based upon a contention that the $77,000 was paid under an agreement with Jefferson Standard to meet the "ultimate necessary financing as would be required" by White Lakes and that Jefferson Standard's refusal to do so entitled White Lakes to a return of the money under a theory of unjust enrichment arising from an impossibility of performance.

After the discovery of evidence had been completed by both parties Jefferson Standard filed a motion for summary judgment against count two of the petition. The motion was sustained. Error is claimed thereon.

In entering summary judgment against White Lakes on count two the trial court found, (1) there was no evidence discovered tending to support a promise to loan an amount sufficient to meet the ultimate financial needs of White Lakes to complete the project, (2) that any evidence to support such a promise would be inadmissible under the parol evidence rule as tending to change the terms of the unambiguous written agreement, (3) that there was no evidence discovered to support any legal theory of impossibility of performance, and (4) there was no genuine issue as to any material fact and that appellee was entitled to judgment as a matter of law on count two of the petition.

These findings and the judgment as to count two are supported by the record. The written loan commitment agreement is complete, unambiguous and free from uncertainty. A written contract which

is complete, unambiguous and free from uncertainty cannot be varied or changed by parol evidence of prior or contemporaneous agreements or understandings in the absence of fraud. (*Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 338, 424 P. 2d 541.) When no fraud is alleged and a contract is complete and unambiguous, evidence of negotiations which culminated in a written contract is not admissible for the purpose of varying the terms of the written contract (*Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 360 P. 2d 23.)

Impossibility of performance, recognized in the law as a basis for relief from contractual obligations, is not of the nature contended for by appellant. When one agrees to perform an act possible in itself he will be liable for a breach thereof although contingencies not foreseen by him arise which make it difficult, or even beyond his power, to perform and which might have been foreseen and provided against in the contract.

The impossibility which will, or may, excuse the performance of a contract must exist in the nature of the thing to be done. It must not exist merely because of the inability or incapacity of the promisor or obligor to do it. (17A C. J. S., Contracts, § 463 (1), P. 610; 17 Am. Jur. 2d, Contracts, § 506, p. 987; *State Highway Construction Contract Cases*, 161 Kan. 7, 166 P. 2d 728; *Winfrey v. Automobile Co.*, 113 Kan. 343, Syl. 4, 214 Pac. 781.)

In *Winfrey v. Automobile Co.*, supra, it was said:

"Where one agrees to perform an act possible in itself he will be liable for a breach thereof although contingencies not foreseen by him arise which make it difficult or even beyond his power to perform and which might have been provided against in the agreement." (Syl. ¶ 4.)

The impossibility of performance in this case existed, if at all, by reason of the inability of White Lakes to complete construction at a cost within the loan commitment it had previously secured from Jefferson Standard. This is not the impossibility recognized in the law.

We turn now to count one. The issues presented therein were submitted to the court on a stipulation of the parties as a court trial on the pleadings, depositions and the briefs of both parties. A contention of the appellant to the contrary is not supported by the record.

The issues raised on appeal as to count one depend upon the

nature of the provision for payment of the $77,000. Was it a penalty provision or one for liquidated damages?

The trial court, after considering the loan commitment agreement and the deposition testimony, found the provision for the advance payment by White Lakes was a valid provision for liquidated damages and that it was not a penalty provision. In addition the court found (1) that White Lakes had willfully breached the contract, (2) that it had failed to prove the $77,000 was an excessive amount for the damages resulting from the breach, (3) that there was no showing unjust enrichment would result from enforcement of the provision, and (4) that the White Lakes' claim should be denied.

Under certain circumstances provisions similar to the present one have been enforced by this court. In such cases the advance payment is determined to have been paid under a proper agreement for liquidated damages. The amount of damages has been agreed upon in advance and such agreement forecloses any need to prove the actual damages resulting from the breach. (*Gregory v. Nelson,* 147 Kan. 682, 78 P. 2d 889; *Owen v. Christopher,* 144 Kan. 765, 62 P. 2d 860; *Kansas City v. Industrial Gas Co.,* 138 Kan. 755, 28 P. 2d 968; *City of Topeka v. Industrial Gas Co.,* 135 Kan. 646, 11 P. 2d 1034, cert. den. 287 U. S. 658, 77 L. Ed. 568, 53 S. Ct. 121.)

However, when a provision for forfeiture of the advance payment is determined by the court to be a penalty provision, a punishment for default, without regard to actual damages resulting on a breach of the contract, it is held to be unenforceable. In such cases the nondefaulting party is left to a recovery of such actual damages as he can prove. (*Heatwole v. Gorrell,* 35 Kan. 692, 12 Pac. 135; *Land Co. v. Barton,* 51 Kan. 554, 33 Pac. 317; *Evans v. Moseley,* 84 Kan. 322, 114 Pac. 374; *Kuter v. Bank,* 96 Kan. 485, 152 Pac. 662, modified 97 Kan. 375, 154 Pac. 1009; *Metz v. Clay,* 101 Kan. 45, 165, Pac. 809.)

The rules for determining the true nature of such an advance payment provision are set forth in *Beck v. Megli,* 153 Kan. 721, 114 P. 2d 305, as follows:

"In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms 'penalty' or 'liquidated damages' in the instrument is of evidentiary value only.

It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. . . . The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damage resulting from default would not be easily and readily determinable. . . ." p. 726.

Let us apply these rules to the present case. The provision in the present contract employed the term "liquidated damages." Although not conclusive this should be given some weight. No claim is made that the amount stipulated (2% of the amount of the loan committed) was unconscionable. No contention is made that a lesser percentage is commonly required. An officer of the mortgage brokerage company testified that the percentage was within the customary percentages required, i. e., one-half of one percent to three percent. In this case the original commitment was issued on September 5, 1963, and the loan was to be closed in May, 1965, a year and eight months later. The commitment provided for a locked-in interest rate of 5.75 percent per annum on the long term mortgage. There was evidence that during construction of the project Jefferson Standard could be expected to make thorough inspections of the work as it progressed to insure itself of lasting construction. Jefferson Standard had its principal place of business located in Greensboro, North Carolina, and would have substantial expenses of transportation and time spent during this construction period. It would incur substantial legal and professional services in examining, evaluating and approving long term leases which would be assigned to it to assure payment of the loan. The company's financial house had to be kept in order during the period to assure that $3,850,000 would be available on completion. We need not recite all evidence introduced on this point. Suffice it to say, the court's finding that the amount was reasonable is supported by substantial evidence in the record.

It is contended this was an adhesion contract and the provision for liquidated damages was not agreed upon "at arm's length." The loan commitment was obtained by White Lakes through a mortgage brokerage company with which it chose to deal and upon which it

relied. Obviously the parties to this transaction which involved approximately four million dollars were dealing at arms length. No change in the percentage required was requested. It cannot be denied that White Lakes understood and paid this amount without compulsion other than a need for a commitment. The commitment for "end financing" made it possible for White Lakes to obtain interim construction financing from other sources.

The other consideration which enters into a determination of a liquidated damages provision is whether the elements and the amount of actual damage resulting from a breach are difficult to determine. When the damages on breach are more involved and difficult to establish the situation lends itself to an agreed provision for liquidated damages which will be approved by the court. Here the elements of damage are varied in nature and the actual amount would be difficult to establish with certainty and particularity.

It is suggested that we have no Kansas cases which cover like provisions in loan commitment agreements and that the rules for determination set forth herein should not apply to loan commitment agreements. The rules set forth in *Beck v. Megli*, supra, are applicable under the general law relating to contracts. We see no reason for applying different rules to loan commitment agreements. Liquidated damage provisions in loan commitment agreements are quite generally approved. Today the commitment fee has become a fact of financial life. A commitment to make the end loan is necessary for the construction as it progresses. (See *Boston Road Shopping Center, Inc., v. Teachers Insurance and Annuity Association of America*, 13 A. D. 2d 106, 213 N. Y. S. 2d 522, aff'd 11 N. Y. 2d 831, 227 N. Y. S. 2d 444, 182 N. E. 2d 116; *Goldman v. Connecticut General Life Insurance Company*, 251 Md. 575, 248 A. 2d 154, and *Chambers & Co. v. Equitable Life Assurance Society*, 224 F. 2d 338 [5 C. A. 1955].)

In determining whether a provision in a loan commitment agreement for payment of a stipulated amount in case of breach is to be construed and enforced as a provision for "liquidated damages" or as a "penalty," the terms used by the parties are given evidentiary weight, but are not necessarily controlling, and courts will look to all the facts and circumstances of the transaction.

Unless invalid for other reasons, advance payments to be forfeited in event of a breach between parties to a loan commitment contract should be held liquidated damages, (1) if the amount is reasonable

in view of the value of the subject matter and of the probable and presumptive loss in case of breach, and (2) if the amount of actual damages in case of breach would not be easily and readily determinable.

We conclude the trial court properly held the $77,000 advance payment was made under a binding agreement for liquidated damages.

The judgment is affirmed.