SUITT CONSTRUCTION COMPANY, INC., KORBLER DEVELOP-
MENT CORP., LARRY L. BRITTAIN, P. PEYTON WARLEY,
NELL C. KORBLER, KENNETH L. MARTIN, G. FRANK KOR-
BLER, NELL JOY COOK, GLORIA ANN TIMBERLAKE, BETTY
LOU HARTIS, WILLIAM JOSEPH KORBLER, ROBERT FRANK
BOERKEOL, GENERAL PARTNERS D/B/A HILL HAVEN DEVELOP-
ERS, NORTH CAROLINA LIMITED PARTNERSHIP AND COLWICK DE-
VELOPMENT CORPORATION, A NORTH CAROLINA CORPORATION
v. THE SEAMAN'S BANK FOR SAVINGS AND FIRST UNION
NATIONAL BANK OF NORTH CAROLINA

No. 7626SC198

(Filed 21 July 1976)

1. **Courts § 21— making of contract — place of last act determines where contract made**

    A loan commitment agreement between the parties had as its pri-
    mary object the proposed loan from defendant to plaintiffs, not the
    construction of an apartment complex for which the loan was ob-
    tained; therefore, the place at which the last act was done by either
    of the parties essential to a meeting of the minds determined the
    place where the contract was made.

2. **Courts § 21— last act constituting contract occurring in N. Y.— N. Y. law applicable**

    Receipt by defendant in N. Y., on or before 16 March 1973, of
    the signed acceptance by plaintiff and other documents mentioned in the
    loan commitment agreement constituted the last act essential to the
    parties' meeting of the minds; therefore, N. Y. law should be applied
    in determinng the validity of the contract.

3. **Courts § 21; Damages § 7— standby fee in loan commitment — N. Y. law applicable**

    In an action under the Declaratory Judgment Act seeking to
    have a provision in a loan commitment agreement declared an invalid
    and unenforceable penalty clause, the trial court properly applied the
    rule followed by the N. Y. appellate courts upholding and enforcing
    the standby fee contained in a loan commitment as liquidated dam-
    ages or as consideration for the commitment.

APPEAL by plaintiff from *Snepp, Judge.* Judgment entered
17 November 1975 in Superior Court, MECKLENBURG County.
Heard in the Court of Appeals 8 June 1976.

This is an action under the Declaratory Judgment Act, G.S. 1-253 et seq., asking that a provision in a loan commitment agreement be declared an invalid and unenforceable penalty clause, and that plaintiffs recover $70,000 plus interest from defendant The Seaman's Bank for Savings (hereinafter referred to as defendant Seaman's).

The complaint alleges in pertinent part:

Plaintiffs, except Colwick Development Corporation (Colwick), are partners doing business as Hill Haven Developers (Hill Haven). Colwick is a "dummy" North Carolina corporation which defendant Seaman's required Hill Haven to set up to execute the agreement in question on behalf of Hill Haven. Defendant Seaman's is a New York banking corporation with principal office in New York City. Plaintiff Hill Haven is a North Carolina limited partnership, organized to acquire and construct an apartment complex to be known as "Woodwinds," in Charlotte, N. C.

On or about 5 March 1973 defendant Seaman's offered to lend Hill Haven $3,500,000, the loan to be secured by first mortgage on certain real estate in Charlotte. The loan was to be consummated pursuant to the terms set forth in defendant Seaman's commitment letter dated 5 March 1973. The letter is made a part of the complaint and contains the following pertinent provisions:

"10. Deposit: The borrower deposits in New York with this Bank, the sum of $70,000 (an irrevocable unconditional Letter of Credit, to run 30 days beyond the below closing date, drawn by a Bank approved by us and payable at a New York City bank, will be acceptable) to be held in New York by this Bank as security for liquidated damages, which sum shall be retained by this Bank in the event that for any reason, other than the default of this Bank under its commitment, the loan does not close on September 16, 1974, or earlier at this Bank's option, or as extended by this Bank in writing. The deposit will be returned when and if the loan closes pursuant to this agreement. This provision for liquidated damages is inserted herein, in view of the difficulty of establishing the damages of this Bank in the event this loan should not close under such circumstances.

"11. A non-refundable commitment fee, in the amount of $35,000 is to be paid to this Bank, in New York, at the time of acceptance of this Commitment Letter."

Pursuant to paragraph 11 of the commitment agreement, Hill Haven paid to defendant Seaman's the sum of $35,000 at the time of acceptance of the agreement. Pursuant to paragraph 10 of the agreement, Hill Haven has deposited with defendant Seaman's the sum of $70,000 in the form of an irrevocable letter of credit drawn by defendant First Union National Bank (First Union) and payable to defendant Seaman's.

The said sum of $70,000 is denominated in said paragraph 10 of the commitment agreement as "security for liquidated damages"; and the agreement states that said sum will be retained by defendant Seaman's in the event that for any reason, other than the default of defendant Seaman's, the loan is not closed on 16 September 1974. (By amendment the date was changed to 21 March 1975.)

The $70,000 was not related in any manner to the probable actual damages that would be suffered by defendant Seaman's in the event of a breach of the agreement. The denomination of the sum as liquidated damages did not result from a good faith effort by the parties to establish in advance the actual damages that would ensue in case of a breach, but was arbitrarily adopted by defendant Seaman's and forced upon plaintiffs as a condition of the loan. Any damages accruing to defendant Seaman's are readily ascertainable.

Because of unprecedented inflationary factors, as well as financial uncertainty within the construction industry, plaintiffs have been unable to undertake construction of the proposed apartments, therefore, they will be unable to complete their construction by 21 March 1975.

On information and belief plaintiffs allege that defendant Seaman's has invested the funds allocated to the aforesaid commitment in short term securities at a rate of return substantially in excess of the rate of return set forth in the commitment letter; that defendant Seaman's will suffer no actual damages from breach of the agreement; in fact, it will profit from a breach for the reason that it will be able to loan the $3,500,000 promised to plaintiffs at a substantially higher interest rate than that set forth in the commitment letter.

Plaintiffs asked that the $70,000 payment be declared a penalty and to be void and unenforceable under North Carolina law; and that defendant First Union be enjoined from paying to defendant Seaman's, and defendant Seaman's be enjoined from demanding payment of, the $70,000.

By an amendment to the complaint, plaintiffs alleged that defendant First Union had paid the $70,000 to defendant Seaman's, therefore, they asked for judgment against defendant Seaman's in that amount.

Defendants filed answer after which plaintiffs and defendants moved for summary judgment.

In its answers to interrogatories, admissions, etc., defendant admitted that plaintiffs paid it $35,000 as a nonrefundable commitment fee; that plaintiffs and defendant Seaman's did not discuss or negotiate concerning the amount of actual damage said defendant would suffer if the loan was not closed; and that on the date of breach defendant Seaman's could have loaned the funds at a greater interest rate than provided in the commitment agreement. However, defendant Seaman's explained that actual damages could not accurately be ascertained on the date of the commitment because it could not predict the future state of the money market and had to keep available the amount committed as part of its cash flow which precluded it from investing the funds elsewhere.

Plaintiffs also submitted in support of their motion for summary judgment admissions by defendant Seaman's that it had suffered no actual damage as a result of plaintiffs' failure to close the loan; that defendant Seaman's damage could be accurately ascertained on the date of breach; that the sum stipulated as "liquidated damages" was unilaterally arrived at by defendant Seaman's; and that it would suffer no actual damage if it loaned the funds committed to plaintiffs to a third party at an interest rate equal to or in excess of that specified in the commitment letter.

Following a hearing, the trial court granted defendant's motion for summary judgment and plaintiffs appealed. Further pertinent facts are set forth in the opinion.

*DeLaney, Millette, DeArmon & McKnight, P.A., by Ernest S. DeLaney, Jr., and Ernest S. DeLaney III, for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell, by John L. Jernigan, for defendant appellee.*

BRITT, Judge.

Plaintiffs contend that North Carolina law is applicable to the contract in question and that under the law of this State summary judgment in favor of defendants was not proper.

[1] First, plaintiffs argue that the agreement was executed in Charlotte and was to be performed in that city. With respect to performance, plaintiffs insist that the construction of the apartment complex was the "thing to be performed" and the general rule is that the law of the place of performance applies. While we agree with plaintiffs as to this rule of law, we cannot agree that the primary object of the agreement was the construction of the apartment complex. We hold that the proposed loan from defendant Seaman's to plaintiffs was the primary object.

We agree with plaintiffs that this jurisdiction follows the general rule that the validity and construction of a contract are to be determined by the law of the place where the contract is made. *Davis v. Davis,* 269 N.C. 120, 152 S.E. 2d 306 (1967), and cases therein cited. Our Supreme Court has also held that the place at which the last act was done by either of the parties essential to a meeting of the minds determines the place where the contract was made. *Fast v. Gulley,* 271 N.C. 208, 155 S.E. 2d 507 (1967), and cases therein cited.

Plaintiffs argue that the agreement was prepared and signed by defendant Seaman's in New York after which it was mailed to plaintiffs in Charlotte; that on 14 March 1973 officials of Colwick signed an approval and acceptance of the agreement and returned it by mail to defendant Seaman's; that this was the last act done essential to a meeting of the minds, therefore, North Carolina law became applicable.

[2] We do not find plaintiffs' argument persuasive. The closing paragraph of the agreement, which is in the form of a letter, reads as follows:

"This Bank agrees to hold the above offer open until Friday, March 16, 1973. If acceptance of the above terms

and conditions has not been indicated by the borrower signing *and the receipt by us in New York* of the enclosed green copy of this letter, and the enclosed authorization for title search, together with the borrower's corporate check to our order, in the amount of $35,000, representing the non-refundable commitment fee and a similar check or Letter of Credit, in the amount of $70,000, representing the security deposit, on or before that date, this offer will be considered null and void." (Emphasis ours.)

We think the receipt by defendant Seaman's in New York, on or before 16 March 1973, of the signed acceptance by Colwick and the other documents above mentioned constituted the last act essential to the meeting of the minds, thereby making application of New York law proper in determining the validity of the contract. *See, e.g.,* A. Ehrenzweig, Conflict of Laws §§ 176, 194 (1962) ; *Kossick v. United Fruit Co.,* 365 U.S. 731, 6 L.Ed. 2d 56, 81 S.Ct. 886 (1961), *rehearing denied,* 366 U.S. 941, 6 L.Ed. 2d 852, 81 S.Ct. 1657 (1961).

[3] It appears that the New York appellate courts have followed the rule adopted by several other jurisdictions upholding and enforcing the standby fee contained in a loan commitment as liquidated damages or as consideration for the commitment, and have rejected the contention that these charges are unenforceable penalties. *See Boston Road Shopping Center, Inc. v. Teachers Insurance and Annuity Assoc.,* 13 App. Div. 2d 106, 213 N.Y.S. 2d 522 (1961), *aff'd,* 11 N.Y. 2d 831, 227 N.Y.S. 2d 444, 182 N.E. 2d 116 (1962), *motion for reargument denied,* 11 N.Y. 2d 1064, 230 N.Y.S. 2d 1026 (1962).

For cases from other jurisdictions that apparently have followed the rule, *see: Shel-Al Corporation v. American National Insurance Co.,* 492 F. 2d 87 (5th Cir. 1974) ; *White Lakes Shopping Center, Inc. v. Jefferson Standard Life Insurance Company,* 208 Kan. 121, 490 P. 2d 609 (1970) ; *Goldman v. Connecticut General Life Insurance Company,* 251 Md. 575, 248 A. 2d 154 (1968) ; *Regional Enterprises, Inc. v. Teachers Ins. and Annuity Ass'n,* 352 F. 2d 768 (9th Cir. 1965) ; and *Continental Assurance Co. v. Van Cleve Bldg. & Constr. Co.,* 260 S.W. 2d 319 (Mo. App. 1953).

For the reasons stated, the judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge MORRIS concur.