Joseph J. HARDING, Jr.

v.

PAN AMERICAN LIFE INSURANCE
COMPANY, a Louisiana Corporation.

Civ. A. No. 77–0498–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 20, 1978.

James W. Tredway, III, Michael L. Soffin, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for plaintiff.

John S. Davenport, III, Philip J. Bagley, III, Stephen A. Northup, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Joseph J. Harding, Jr., a citizen of the State of Virginia, brings this diversity action against Pan American Life Insurance Co., a corporation incorporated under the laws of Louisiana. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1332. The matter is before the Court on motions for summary judgment filed by the respective parties. The facts have been stipulated, and the motions are now ripe for decision.

The facts reflect that plaintiff Harding is in the business of developing commercial real estate. In connection with that business, he entered into an agreement in December, 1975, with Pan American whereby Pan American was to loan plaintiff the sum of $1,100,000.00 in reference to Mr. Harding's development of a certain shopping center. The loan was subject to plaintiff's compliance with all the terms and condi-

tions of the loan commitment agreement entered into between the parties. By January, 1976, the plaintiff had deposited with defendant the sum of $22,000.00, pursuant to paragraph D of the agreement, which reads in pertinent part:

[T]he applicant agrees that if an Event of Default shall occur, Applicant shall pay to the lender $22,000.00 (the Deposit) and the Applicant hereby delivers to the Lender the amount of $11,000.00 in check with an additional $11,000 check to be forwarded upon receipt of Lender's acceptance of this offer, all of which the Lender (if this Offer is accepted) shall use to satisfy any obligations the Applicant may have or incur under the Agreement. . . .

The contemplated loan was to be consummated on July 1, 1976, but was, with the consent of the parties, extended twice, until November 15, 1976. The loan did not close pursuant to the parties' agreement and Pan American has retained the $22,000.00 paid by Mr. Harding, claiming that it is entitled to keep the money pursuant to the loan commitment agreement. Plaintiff, on the other hand, seeks a refund, contending that the defendant's retention of the money is unreasonable and amounts to a penalty.

A pertinent and material aspect of the loan agreement is contained in paragraph C of that document, which requires that before the loan was made, Mr. Harding was to secure tenant leases containing provisions acceptable to the defendant, Pan American. The agreement further contemplated that such leases were to be assigned as security for the loan. The facts reflect that the parties attempted to reach agreement on the terms of the tenant leases, but that the provisions demanded by Pan American were not incorporated into the tenant leases associated with the plaintiff's development. The Court notes that there is no allegation of lack of good faith by either party. Defendant's contention, succinctly stated, is that the failure of plaintiff to provide acceptable tenant leases was a default as defined by paragraphs C and D of the agreement.

■ The Court is of the view that, as defined by the provisions of a loan commit-

ment agreement, plaintiff was in default. Paragraph C of the agreement specifically stated that "failure to comply with all the terms and conditions hereof on or before . . . [closing date] shall constitute a default." Paragraph D of the loan commitment agreement specifically requires the applicant, in this case plaintiff, to pay to the lender, Pan American, the deposit of $22,000.00 in case of default. While the terms and conditions of the contract between the parties is unambiguous, the Court must still address the issue as to whether paragraphs C and D of the agreement constitute penalty clauses and hence are void and unenforceable. While plaintiff so contends, defendant, on the other hand, maintains the position that these clauses are valid liquidated damage provisions and that the $22,000.00 is what is called in the trade, a stand-by fee.

■ The applicable law as to whether the retention of the $22,000.00 by defendant is a penalty, stand-by fee or liquidated damages is Virginia law. The contract between the parties was entered into in Virginia. The deposit was paid in Virginia and the contemplated shopping center to have been developed by Mr. Harding was located in Virginia. The issue is one of substantive contract law. The Supreme Court of Virginia has not yet specifically ruled upon the retention of deposits in loan commitment contracts, but at least one lower Virginia court has addressed and upheld a similar contract clause. *See Morrissette v. Home Beneficial Life Insurance Co.* (Dec. 2, 1975 Fairfax Co. Circuit Court). Petition for appeal denied (Oct. 21, 1976, Supreme Court of Va.). Moreover, several other jurisdictions have upheld the retention of deposits in loan commitment contracts. *Shel-Al Corp. v. American National Insurance Co.*, 492 F.2d 87 (5th Cir. 1974); *In re Four Seasons Nursing Centers of America, Inc.*, 483 F.2d 599 (10th Cir. 1973); *Regional Enterprises, Inc. v. Teachers Insurance and Annuity Assoc.*, 352 F.2d 768 (9th Cir. 1965); *Testerman v. Home Beneficial Life Insurance Co.*, 524 S.W.2d 664 (Tenn.Ct.App. 1974); *Suitt Construction Co. v. Seaman's Bank for Savings*, 30 N.C.App. 155, 226

S.E.2d 408 (1976); *Goldman v. Connecticut General Life Insurance Co.*, 251 Md. 575, 248 A.2d 154 (1968); *White Lakes Shopping Center v. Jefferson Standard Life Insurance Co.*, 208 Kan. 121, 490 P.2d 609 (1971); *Boston Road Shopping Center, Inc.' v. Teachers Insurance and Annuity Association*, 13 A.D.2d 106, 213 N.Y.S.2d 522 (1961) *affirmed* 11 N.Y.2d 1064 (1962). All of the foregoing cases have upheld the retention of deposit money on the grounds that the money was liquidated damages, a stand-by fee, or constituted consideration for the loan commitment contract. Whichever label one chooses to adopt for money retained by the proposed lender, the right to retain the money as a loan commitment fee if the loan is not ultimately funded, has been overwhelmingly upheld. There are sound business reasons which justify the validity of these so called stand-by fees. The lender must go to the time and expense of investigating the loan application prior to the entering into a loan commitment contract. Additionally, the proposed lender is as a practical matter locked in at a stated interest rate while the money market could change drastically in the months before the loan closes. Further, there are legal expenses incurred in regard to the seeking of compliance with the terms and conditions of the loan commitment contract. The further justification of course is that the money, once committed, precludes the lender from allocating those funds for any other loan. In short, such fees are a fact of financial life and a manner of doing business in the mortgage finance world. *See Shel-Al Corp. v. American National Insurance Co., supra* at p. 95 and the cases cited therein.

■ The Court is of the opinion that the deposit may be retained by Pan American under Virginia law. The $22,000.00 is surely not an unreasonable amount of money wherein a commitment for a loan must be kept available at a fixed interest rate for several months. Additionally, though not at all controlling, the parties are experienced business people who struck what they considered to be at the time a firm and fair bargain. Any contention that the deposit of $22,000.00 under the circumstances of this case, wherein the defendant was committed to loan in excess of $1,000,000.00 is unreasonable, is in the Court's view, specious. *See Boston Road Shopping Center, Inc. v. Teachers Insurance and Annuity Association, supra.* By analogy, Va.Code § 8.2–718 permits retention of deposits involving sales of goods which are reasonable in amount.

■ The law requires that the Court conduct a two step inquiry in examining such loan commitment fees. First, the Court must determine whether the fee is reasonable under the circumstances of that .proposed loan. Second, the Court must determine whether the proposed lender acted in good faith. It would be inequitable to permit a proposed lender to purposely obstruct the closing of a loan and then claim a right to retain the deposit. In the instant case the Court has concluded that the amount of the deposit was reasonable and the parties have stipulated that their failure to come to agreement was not due to the lack of good faith on the part of either party. Having so concluded, it follows that plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment, granted.

An appropriate order will issue.